# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

DANIEL M. LYNCH : 
    *Plaintiff,* : 

    vs. :   **CASE NO:** _____

     :   3:15cv1379 (AVC)

STATE OF CONNECTICUT : 
    JUDICIAL BRANCH, :   **CIVIL COMPLAINT FOR**
CHASE T. ROGERS, * :   **DAMAGES, INCLUDING**
PATRICK L. CARROLL, III., * :   **DECLARATORY AND**
ELIZABETH K. GRAHAM, * :   **INJUNCTIVE RELIEF UNDER**
MARTIN R. LIBBIN, * :   **42 U.S.C. § 12101, et seq.,**
MARK J. CIARCIELLO, * :   **42 U.S.C. § 12203, 29 U.S.C. § 701,**
SANDRA LUGO GINES, * :   **28 U.S.C. § 1331, 28 U.S.C. § 1367,**
DANIEL IRACE, * :   **42 U.S.C. § 1983, 18 U.S.C. 242,**
JASON T. LOVALLO, * :   **42 U.S.C. § 1985, 18 U.S.C. 241,**
THOMAS G. SMITH, * :   **42 U.S.C. §§ 1981, 1982, 1986, 1988,**
GERARD I. ADELMAN, * :   **18 U.S.C. §§ 245, 1509-1519,**
ALFRED J. JENNINGS, * : 
JUDITH ROSSI, * :   **Americans with Disabilities Act**
BARBARA N. BELLIS, * :     **Amendments Act of 2008**
GEORGE N. THIM, * :   **Rehabilitation Act of 1973 § 504,**
CORINNE L. KLATT, * :   **Civil Rights Act of 1964,**
CHRISTOPHER T. GOULDEN, * :   **Civil Rights Restoration Act**
LARRACUENTE & GOULDEN, LLC, :     **of 1987**
DANIEL D. PORTANOVA, * : 
PORTANOVA AND RUTIGLIANO, P.C., : 
DOE INSURANCE COMPANY, : 
ERIC M. GROSS, * : 
GREEN AND GROSS, P.C., :   **JURY TRIAL DEMANDED**
JONATHAN P. WHITCOMB, * : 
DISERIO MARTIN O'CONNOR : 
  && CASTIGLIONI LLP, : 
BENJAMIN T. STASKIEWICZ, * : 
HUNT LEIBERT JACOBSON, P.C. : 
J. DOE 1-25 : 
    *Defendants.* :   **SEPTEMBER 15, 2015**

---

*\* Asterisk denotes defendants sued in their official and individual capacity*

# COMPLAINT

## A. PARTIES

1.     Plaintiff Daniel M. Lynch is a citizen of the United States and from July 1994 to March 2014, a resident of Trumbull, Connecticut. He has since been without a home, staying with various friends and relatives, but maintains a U.S. post office box at P.O. Box 40, Trumbull CT 06611-0040. Plaintiff is a qualified individual with disabilities pursuant to the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. § 12102 (*see also* 28 C.F.R. § 35.104). He has been declared indigent by numerous state and federal jurists during the most recent 12 months and has also been the recipient of state assistance during this time;

2.     Defendant State of Connecticut Judicial Branch ("Judicial Branch" or "Branch") is the Judicial Department of the government of the State of Connecticut. It maintains executive offices at the Supreme Court Building, 231 Capitol Avenue, Hartford CT 06106, and also a Superior Court Operations Division located at 90 Washington Street, Hartford CT 06106, among numerous other locations throughout Connecticut. Executive leaders of this public entity include Chief Justice Chase T. Rogers, Judge Patrick L. Carroll, III, Governor Dannel P. Malloy, and others named herein as defendants in their official and individual capacities;

3.     Defendant Chase T. Rogers, sued in both her official and individual capacity, is employed by the Judicial Branch as Chief Justice, 231 Capitol Avenue, Hartford CT 06106. At all times relevant to this complaint, she has served as both the chief executive officer of the Branch (executive and administrative capacities), as well as

Chief Justice of the Supreme Court (judicial capacity). All policies set, funds expended, and employees and/or contractors contributing to the programs, services, and activities of the Branch ultimately report to this defendant;

4.     Defendant Patrick L. Carroll, III, sued in both his official and individual capacity, is employed by the Judicial Branch as chief administrative judge, 231 Capitol Avenue, Hartford CT 06106. At times relevant to this complaint, he served as member or chairman of the Judicial Branch Advisory Board on the Americans with Disabilities Act and had/has oversight of personnel charged with compliance of Title II mandates under the ADA/ADAAA. He also served as member or chairman of the Executive Committee of the Superior Court Judges. This defendant serves in an executive and administrative (non-judicial) capacity;

5.     Defendant Elizabeth K. Graham, sued in both her official and individual capacity, is employed by the Judicial Branch as Director of the Human Resource Management Unit, Administrative Services Division, 90 Washington Street, Hartford CT 06106. Upon information and belief, Ms. Graham is one of several 'designated responsible employees' for ensuring Branch compliance with the ADAAA and, among other things, the review and disposition of all Judicial Branch grievance complaints filed under the Americans with Disabilities Act;

6.     Defendant Martin R. Libbin, sued in both his official and individual capacity, is employed by the Judicial Branch as director, legal services, 100 Washington Street, Hartford CT 06106. He is an attorney registered in the State of CT (Juris # 101373) and is the individual who personally signed, on behalf of the Branch, a

formal settlement agreement with the United States of America for previous civil rights violations by the Judicial Branch under Title II of the Americans with Disabilities Act (DOJ #204-14-115, executed 11/03/2003);[1]

7.      Defendant Mark J. Ciarciello, sued in both his official and individual capacity, is employed by the Judicial Branch as Manager, Human Resource Management Unit, Administrative Services Division, 90 Washington Street, Hartford CT 06106. He is an attorney registered in the State of CT (Juris # 421351);

8.      Defendant Sandra Lugo Ginés, sued in both her official and individual capacity, is employed by the Branch and is one of several 'designated responsible employees' for ensuring Branch compliance with the ADAAA. Ms. Ginés title is "Program Manager – ADA" and she is located at the Office of the Executive Director, Superior Court Operations, 90 Washington Street, Hartford CT 06106.

9.      Defendant Daniel Irace, sued in both his official and individual capacity, is employee by the Judicial Branch, Superior Court Operations Division, 90 Washington Street, Hartford CT 06106.  His title is "Court Planner – ADA" and, upon information and belief, he serves a 'designated responsible employee' to ensure Judicial Branch compliance with the ADAAA in the absence of Ms. Lugo Ginés;

10.     Defendant Jason T. Lovallo, sued in both his official and individual capacity, is employed by the Judicial Branch as an assistant clerk and is the designated ADA contact person at 1061 Main Street, Bridgeport CT 06604. He is an attorney registered in the State of Connecticut (Juris # 421137);

---

[1] See U.S. Dept. of Justice Status Report, "Enforcing the ADA," 2003, Issue 4, Oct-Dec 2003.

11.     Defendant Thomas G. Smith, sued in both his official and individual capacity, is employed by the Judicial Branch as the reporter of judicial decisions and is the designated ADA contact person for the Supreme and Appellate Court at 231 Capitol Avenue, Hartford CT 06106. At times relevant to this complaint and through this date, he has also served on the Judicial Branch Advisory Board on the ADA. He is an attorney registered in the State of Connecticut (Juris # 304700);

12.     Defendant Gerard I. Adelman is employed by the Judicial Branch as a superior court judge. At times relevant to this complaint, he first presided over family court matters at the Regional Family Trial Docket in the Judicial District of Middlesex at Middletown, but since September 2014 has served as presiding judge for family court matters in the Judicial District of Fairfield at Bridgeport, 1061 Main Street, Bridgeport, CT 06604. During his tenure as judge, this defendant also served as a member of the board of directors of the Association of Family and Conciliation Courts ("AFCC"),[2] until such time as an opinion was issued by the commission on judicial ethics as to the impropriety of same. He is sued in both his official and individual capacity;

13.     Defendant Alfred J. Jennings is employed by the Judicial Branch as a superior court judge. At times relevant to this complaint, he has presided over civil

---

[2] The Association of Family and Conciliation Courts ("AFCC"), established 1975, is a Wisconsin-based nonprofit for family court industry professionals. For 30 years, it operated within Connecticut (and from within Judicial Branch facilities) without proper Secretary of the State registration. As the AFCC came under increased public scrutiny for alleged corruption and fraud, a 'Connecticut Chapter of AFCC, Inc.' was registered on 3/26/2013, but now shows a 'dissolved' status. Articles by award-winning journalist, Anne Stevenson, in both the *Washington Times* and *Communities Digital News*, in 2014 were among those which chronicled these and related issues.

foreclosure matters in the Judicial District of Fairfield at Bridgeport, 1061 Main Street, Bridgeport CT 06604. He is sued in both his official and individual capacity;

14.     Defendant Judith Rossi is employed by the Judicial Branch as a magistrate and at times relevant to this complaint, presides over small claims matters in the Judicial District of Fairfield at Bridgeport, 172 Golden Hill Street, Bridgeport CT 06604. She is sued in both her official and individual capacity;

15.     Defendant Barbara N. Bellis is employed by the Judicial Branch as a superior court judge and at times relevant to this complaint was and continues to serve as presiding judge for civil matters in the Judicial District of Fairfield at Bridgeport, 1061 Main Street, Bridgeport CT 06604. Upon information and belief, she has also served as a member of the Rules Committee and now as a member of the Judicial Review Council and Executive Committee of Superior Court Judges. She is sued in both her official and individual capacity;

16.     Defendant George N. Thim is employed by the Judicial Branch as a superior court judge trial referee. At times relevant to this complaint, he presided over civil court matters in the Judicial District of Fairfield at Bridgeport, 1061 Main Street, Bridgeport CT 06604. He is sued in both his official and individual capacity;

17.     Defendant Corinne L. Klatt is employed as a judge by the Judicial Branch. At times relevant to this complaint, she was located at 1061 Main Street, Bridgeport CT 06604, but now located at 54 West Main Street, Meriden CT 06451. She is sued in both her official and individual capacity;

18.     Defendant Christopher T. Goulden is a citizen of the United States who, upon information and belief, presently resides at 125 Warner Hill Road #76, Stratford CT 06614-1424.   He is an attorney registered in the State of Connecticut (Juris # 402890) and partner in the defendant law firm Larracuente & Goulden, LLC, 311 Bridgeport Avenue, Milford CT 06460, and has also served as a member of the Judicial Branch, Statewide Grievance Committee since July 1, 2010. He is sued in both his official and individual capacities;

19.     Defendant Larracuente & Goulden, LLC ("L&G") is a private law firm registered with the State of CT (Juris # 419147) and located at 311 Bridgeport Avenue, Milford CT 06460. The business was registered with the CT Secretary of the State on March 28, 2001, and bears business ID 0677427, principals include Jerome John Larracuente (Member, 22 Country Place, Shelton CT 06484).  Jerome J. Larracuente is listed as Agent for this business, agent business address listed as 1115 Main Street, Suite 402, Bridgeport CT 06604, agent residence address listed as 36 Montero Drive, Stratford CT 06614;

20.     Defendant Daniel D. Portanova is a citizen of the U.S. who presently resides at 95 Teller Road, Trumbull, Connecticut 06611.  He is an attorney registered in the State of CT (Juris # 047409) and sole owner of the defendant law firm Portanova & Rutigliano, P.C., 3321 Main Street, Bridgeport CT 06606;

21.     Defendant Portanova & Rutigliano, P.C. ("P&R") is a private law firm registered with the State of CT (Juris # 407838) and located at 3321 Main Street, Bridgeport CT 06606. The business was registered with the CT Secretary of the

State on April 1, 1993, and bears business ID 0284277, principals include Daniel D. Portanova (President and Director), and Dominick J. Rutigliano (Secretary);

22.     Doe Insurance Company is an unknown insurance carrier believed to have been providing malpractice insurance coverage to defendant's Portanova, Rutigliano, Pappas, and the firm of Portanova and Rutligliano, P.C. at times relevant to this complaint, including but not limited to the time period 2010 through the current date, during which time Doe Insurance Company is believed to have funded interference, intimidation, and retaliation by proxy in case of their client, Portanova and Rutigliano, P.C. vs. Daniel Lynch (FBT-CV-10-5029394-S) tried before a jury in July/August 2014 at the CT Superior Court at Bridgeport;

23.     Defendant Eric M. Gross is a citizen of the United States who presently resides at 117 Suzanne Circle, Trumbull, Connecticut 06611.  He is an attorney registered in the State of CT (Juris # 025330) and partner in the defendant law firm Green and Gross, P.C., 1087 Broad Street, #401, Bridgeport CT 06604;

24.     Defendant Green and Gross, P.C. ("G&G") is a private law firm registered with the State of CT (Juris # 405882) and located at 1087 Broad Street, #401, Bridgeport CT 06604.  The business was registered with the CT Secretary of the State on August 26, 1980, and bears business ID 0108831.  Principals include Eric M. Gross (President), Joel Z. Green (Vice President), Barbara F. Green (Secretary), Samuel T. Rost (Treasurer), and Paul Sobel (Vice President).

25.     Defendant Jonathan P. Whitcomb is a citizen of the United States who presently resides at 107 Fox Run Road, New Canaan CT 06840.  He is an attorney

registered in the State of CT (Juris # 403763) and partner in the defendant law firm Diserio Martin O'Connor & Castiglioni, LLP, 1 Atlantic Street, Stamford CT 06901;

26.    Defendant Diserio Martin O'Connor & Castiglioni, LLP ("DMOC") is a private law firm registered with the State of Connecticut (Juris # 102036) and located at 1 Atlantic Street, Stamford, Connecticut 06901.   The business was registered with the CT Secretary of the State on December 24, 1996, and bears business ID 0550484.   There is no principal or agent information available, but founding partners include: Brian T. O'Connor (residential address unknown) and Richard E. Castiglioni (58 Valley Road, New Canaan CT 06840);

27.    Defendant Benjamin T. Staskiewicz is a citizen of the United States, residence unknown. He is an attorney registered in the State of CT (Juris # 417736) and employed by the defendant firm of Hunt Leibert Jacobson, P.C., 50 Weston St, Hartford CT 06120. He is sued in both his official and individual capacities;

28.    Defendant Hunt Leibert Jacobson, P.C. ("HLJ") is a private law firm registered with the State of Connecticut (Juris # 101589) and located at 50 Weston Street, Hartford CT 06120. The business was registered with the CT Secretary of the State on November 16, 1990, and bears business ID 0254625.   Defendant Kimball Haines Hunt (205 Wintonbury Avenue, Bloomfield CT 06001) is listed as the registered agent. Other founding partners include: Richard M. Leibert (44 Clifford Drive, West Hartford CT 06107) and Richard C. Jacobson (78 Walbridge Road, West Hartford, CT 06119);

29.    Defendants J. Doe 1-25 are those whose specific identities are not yet confirmed by plaintiff, including but not limited to Judicial Branch personnel, attorneys, and others, regarding acts and/or omissions described herein or to be amended or corrected hereto, now reserved as John or Jane Doe 1-25 and will be later amended to this complaint;

## B. JURISDICTION

The jurisdiction of this Court is properly invoked pursuant, but not limited, to the following statutory authorities:

30.    Americans with Disabilities Act Amendments Act of 2008 (United States Code, Title 42 – The Public Health and Welfare, Chapter 126 – Equal Opportunity for Individuals with Disabilities);

   a.  U.S. Constitution, Amendment XIV (14th Amendment), § 1

   b.  42 U.S.C. § 12101-12213 (General);

   c.  42 U.S.C. § 12202 (Abrogation of State Immunity);

      i.   42 U.S.C. 2000d-7 (Civil rights remedies equalization)

   d.  42 U.S.C. § 12203 (Prohibition against retaliation and coercion);

   e.  Pub. L. 88-352, 78 Stat. 241 (Civil Rights Act of 1964);

   f.  29 U.S.C. § 701 (The Rehabilitation Act of 1973, §504);

   g.  Pub. L. 100-259, 102 Stat. 28 (Civil Rights Restoration Act of 1987);

   h.  28 U.S.C. § 1331 (Federal Question);

   i.  28 U.S.C. § 1343 (Civil rights and elective franchise);

   j.  28 U.S.C. § 1367 (Supplemental Jurisdiction);

31.    Civil Rights (United States Code, Title 42 – The Public Health and Welfare, Chapter 21 – Civil Rights, Sub-Chapter 1 – Generally);

    a. 42 U.S.C. § 1983 (Civil action for deprivation of rights)

        i.   18 U.S. Code § 242 (Deprivation of rights under color of law)

    b. 42 U.S.C. § 1985 (Conspiracy to interfere with civil rights)

        i.   18 U.S.C. § 241 (Conspiracy against rights)

        ii.  28 U.S.C. § 1343 (Civil rights and elective franchise);

    c. 42 U.S.C. § 1986 (Action for neglect to prevent)

    d. 42 U.S.C. § 1988 (Proceedings in vindication of civil rights)

32.    Other jurisdictional basis;

    a. U.S. Constitution, Article III, § 2;

    b. U.S. Constitution, Article VI, ¶ 2 (Supremacy Clause);

    c. U.S. Constitution, Article VIII;

    d. 42 U.S.C. § 1981 (Equal rights under the law);

    e. 18 U.S.C. § 245 (Federally protected activities);

    f. The Court's inherent power to invoke equity jurisdiction;

    g. The general legal and equitable powers of this Court;

33.    Venue is proper under 28 U.S.C. § 1391, 18 U.S.C. 1965;

34.    Plaintiff notes he is not an attorney, does not have the means to afford legal counsel due to the harm caused to him by defendants, but files this meritorious pro se complaint in good faith and under sworn oath, further relying on the following as to jurisdiction, complaint, damages, and relief requested:

A complaint drafted by a pro se litigant "however inartfully pleaded," is held "to a less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)

"The Courts have long held that Pro Se pleadings are to be read liberally and if there is relief available that they have failed to request, the Courts should be lenient and the Pro Se litigant should be afforded that available relief." *Moore v. Florida*, 703 F.2d 516 (11th Cir. 1983)

"Whatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Davis v. Wechsler*, 263 U.S. 22 (1923)

". . . allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U. S. 41, 45-46 (1957). See *Dioguardi v. Durning*, 139 F. 2d 774 (CA2 1944)" *Haines v. Kerner*, 404 U.S. 519 (1972)

"... 'all pleadings shall be so construed as to do substantial justice,' . . . Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel [or an indigent pro se plaintiff] may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. *Maty v. Grasselli Chemical Co.*, 303 U.S. 197 [(1938)]" *Conley v. Gibson*, 355 U.S. 41, 48 (1957)

## C. NATURE OF CASE

35.    The plaintiff, Daniel M. Lynch, brings this action to remedy numerous violations of his civil rights, including but not limited to <u>prolonged, wilful and systematic discrimination</u> by the Connecticut Judicial Branch, state and non-state actors, in violation of the Americans with Disabilities Act Amendments Act.[3]

36.    Through circumstances created by defendants, the now indigent, homeless plaintiff suffers from injuries and mental health disorders which make his daily life at times impossible to endure. Branch personnel, in spite of training on individuals with so-called 'hidden disabilities,' <u>repeatedly</u> denied basic accommodations, and actively participated in concert with other named defendants in <u>prolonged interference</u>, threatening, bullying, humiliation, coercion, and retaliation;

37.    Plaintiff further claims that named defendants, individually and in conspiracy with one another, through their actions and inactions, have <u>knowingly</u> interfered with his <u>repeated attempts</u> to gain full and equal access to the services, programs, and activities of the Branch, using <u>intimidation</u>, <u>coercion,</u> and <u>retaliation</u> as a means to humiliate him in a public venue and further inflame his disabilities;

38.    Plaintiff further contends discrimination and retaliation based on his class or status as an indigent, self-represented litigant, having been made indigent by the prolonged abuses inflicted upon him by the state courts, state court actors, and

---

[3] References herein to the Americans with Disabilities Act of 1990 ("ADA") or Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), regardless of how written, refer to the U.S. Code, Title 42, chapter 126, beginning at § 12101, and includes all statutes as enacted and later amended, their corresponding implementing regulations found in the Code of Federal Regulations, all technical assistance materials, and the underlying Rehabilitation Act of 1973, § 504, the Civil Rights Act of 1964, and the Civil Rights Restoration Act of 1987.

other named defendant's involved in what is now a constellation of inter-connected cases pending on the dockets of the state trial and reviewing courts;

39.    Plaintiff asserts that a sub-culture of organized greed, corruption, cronyism, and racketeering has been and is currently exploiting the legal machinery of Connecticut's judicial infrastructure, in part to execute a strategy of <u>sustained and systematic torment</u> against certain litigants, including those who speak out against same, are self represented or have hidden disabilities, exploiting and inflaming those very disabilities through persistent acts and omissions of discrimination. The conduct of state actors, and officers of the court, was and is wanton, reckless or malicious in nature and it was reasonably foreseeable that same would proximately cause <u>and continue to cause</u> extreme harm to plaintiff;

40.    Plaintiff brings claims alleging discrimination, denial of due process and equal protection of the law under Amendments V and XIV of the U.S. Constitution, denial of life, liberty and property interests under Amendment I, seizure of "houses, papers, and effects" under Amendment IV; the infliction of cruel an unusual punishment under Amendment VIII, and other unenumerated rights under Amendment IX. He also alleges conspiracy, deprivation of rights under color of law, tortious interference, and fraud on the court. He brings claims against state and non-state actors seeking money damages on claims including, but not limited to unjust enrichment, fraudulent concealment, abuse of process, negligent and intentional infliction of emotional distress, defamation, and prima facie tort;

41.     Plaintiff claims violations of the U.S. Constitution, Amendment I and IX, among others, challenging whether *purported relief* exists in appearance only, but is instead carefully controlled by a select group of appointed insiders working to insulate the legal community and other *'privileged insiders,'* concealing prolonged misconduct. The ranks of Connecticut's trial and reviewing courts are infiltrated by some who use procedural and dilatory tactics, complex motion practice, wilful and intimidating discrimination, and a *'death by appeal'* approach as a means to punish litigants through a war of attrition, especially those who challenge the status quo or dare seek review pro se. The message from the higher courts is clear, *pro se* litigants may be tolerated, but are certainly *persona non grata*;

42.     Through a prolonged abuse of process, deprivation of rights and conspiracy, defendants have controlled plaintiff's access to legal counsel, *significantly* limiting his access to funds and *repeatedly* threatening him with incarceration over financial matters.[4] Certain defendants have controlled and/or placed <u>knowingly false statements</u> on the court record in an attempt to distort same to make review 'appellate proof.' Documents have gone 'missing' from court files, requests for articulation denied and review denial, helping to conceal the obvious underlying fraud from within. The established local rules and procedures have been selectively used, ignored or exploited to justify defendant's actions, all while <u>ignoring federal statutory authority and overriding federal precedent</u> known to exist;

---

[4] Defendant's acts and omissions were not limited to *threats* of incarceration as they did conspire to cause the *actual* incarceration of plaintiff on 11/19/2009, through a clear act of intimidation and retaliation, abuse of process, deprivation of rights under color of law, and conspiracy, among others.

43.     Judicial Branch executive leaders have further engaged in *wilful fraud* to falsify alleged *random* survey results secured in concert with a third-party state contractor and have also condoned long-standing discriminatory and ethical failures regarding potentially illegal payment schemes that enrich certain Judicial Branch employees at litigant and taxpayer expense. This is most concerning in that said acts and omissions specifically discriminate against qualified individuals with disabilities seeking full, equal and the same access to the services, programs, and activities of the Branch, but are prevented from same as a direct result;

44.     Defendants have conspired to use their individual and collective knowledge of the law and legal procedure as a means to ensure the facts from each underlying case don't come to light. Named defendant's who serve as trial court judges, Appellate and Supreme Court jurists, and executive leaders of the Branch have manufactured decisions and opinions, not based on evidence, facts or law, but crafted same to protect colleagues and prevent matters from being exposed publicly;

45.     Defendant's now attempt to rely on the statistical rarities of certiorari and the veil of protection offered by immunity, <u>Rooker-Feldman</u>, <u>Younger abstention</u>, and other similar doctrines, in hopes that plaintiff's cases will not survive the legal labyrinth established and maintained by this well-organized, corrupt group which has undermined public confidence in the entire judicial system in our state;

46.     Upon information and belief, this plaintiff is viewed as a leader in the public movement for family court reform, and as a pro se litigant, is viewed as part of the 'problem' facing the Judicial Branch which has openly opined about the need to

remain "relevant as a profession," with one or more named defendants seemingly trying to 'cut off the head' of a perceived proverbial snake in their courtrooms;

47.     In the course of pursuing his rights to full and equal access to the Branch, plaintiff has learned of multiple acts of <u>fraud</u>, <u>public corruption</u>, and ethical and <u>financial misconduct</u> being perpetrated on the taxpayers of the State of Connecticut – all <u>directly related to his claims of disability discrimination</u>. Even with knowledge of same, high level state actors have taken no corrective action;

## D. CAUSE OF ACTION

I allege that the following of my constitutional and human rights, privileges, or immunities or my rights under federal and state statutes have been violated and that the following facts form the basis of my allegations:

48.     On various dates prior to the date affixed hereto, upon information and belief, defendants Rogers, Carroll, Adelman, Bellis, Thim, Klatt, Jennings, and Rossi took a sworn Oath for judicial officers pursuant to C.G.S. § 1-25, which reads:

> "You do solemnly swear (or affirm, as the case may be) that you will <u>support the constitution of the United States</u>, and the constitution of the state of Connecticut, so long as you continue a citizen thereof; and that you will faithfully discharge, according to law, the duties of the office of .... to the best of your abilities; so help you God." (emphasis added)

49.     The Constitution of the United States, Article VI, ¶ 2, commonly referred to as the Supremacy Clause, establishes that the federal constitution and federal law <u>take precedence</u> over state laws, and even state constitutions. "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States,

shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." This clause is routinely ignored by employees of the defendant Judicial Branch and has been ignored by defendant's Adelman, Jennings, and Rossi, among other jurists in their dealings with this plaintiff;

50.     On various dates prior to the date affixed hereto, upon information and belief, defendants Rogers, Carroll, Ciarciello, Lovallo, Smith, Libbin, Adelman, Bellis, Klatt, Jennings, Rossi, Goulden, Portanova, Gross, Whitcomb, and Staskiewicz took a sworn Oath for attorneys, under penalty of perjury, pursuant to Connecticut General Statutes § 1-25, which read:[5]

> "You solemnly swear or solemnly and sincerely affirm, as the case may be, that you will do nothing dishonest, and will not knowingly allow anything dishonest to be done in court, and that you will inform the court of any dishonesty of which you have knowledge; that you will not knowingly maintain or assist in maintaining any cause of action that is false or unlawful; that you will not obstruct any cause of action for personal gain or malice; but that you will exercise the office of attorney, in any court in which you may practice, according to the best of your learning and judgment, faithfully, to both your client and the court; so help you God or upon penalty of perjury." (emphasis added)

51.     Plaintiff's first contact with the Branch was 5/30/2008 when he filed, through counsel, a dissolution of marriage action at 1061 Main Street, Bridgeport. That matter was tried to conclusion in 2009, appealed and then reversed in 2012 after finding financial orders were an abuse of discretion. Re-tried in October 2012, and new judgment entered 12/13/2012. That matter was appealed by plaintiff pro se,

– 18 –

later affirmed, certification denied, and a petition for writ of certiorari accepted *in forma pauperis* now remains pending determination. While the nature of this complaint requires the recitation of certain facts and procedural history relative to the dissolution action, those facts and that judgment in and of themselves are not challenged in this complaint as they are properly before the Supreme Court of the United States for consideration as to possible review. Post judgment acts and omissions relating to this claim, however, are directly relevant to this Court's consideration of the allegations of discrimination as noted herein;

52.    Subsequent to this plaintiff's state court dissolution action (he is also plaintiff in that action), he also became entangled in numerous other actions which stemmed directly from that matter. He is defendant in a civil action commenced by his former attorney and with a malpractice counter claim (on appeal). He is one of four co-defendants in a foreclosure action regarding his jointly-owned former marital residence, and he is also defendant in a small claims action brought by a former landlady. The dissolution of marriage, civil collections action, and foreclosure are all on the docket at Bridgeport Superior Court, 1061 Main Street. The small claims action is at a separate address, but also in the City of Bridgeport;[6]

53.    In connection with the aforementioned dissolution action, plaintiff personally appeared at Judicial Branch facilities on various dates, including but not limited to

---

[5] A previous, but substantially similar version of this oath was also in use for decades. While the words may have been modified over the years to reflect more modern language, the underlying meaning has remained constant.

[6] Prior to the 2008 dissolution action, plaintiff Daniel M. Lynch had never filed any lawsuits in any jurisdictions, state or federal. With the exception of a possible speeding or parking ticket dispute, he had no materially significant prior contact with the State of Connecticut Judicial Branch.

in **2008** (12/11, 12/22\*, 12/30\*), in **2009** (1/07\*, 1/28\*, 2/06\*, 2/19\*, 3/27\*, 6/25, 8/03,

8/31, 9/02, 9/08, 11/12, 11/19, 12/10), in **2010** (1/28, 2/09, 9/02, 9/07, 9/10, 10/04,

10/28), in **2011** (1/13, 2/17, 2/24, 3/17, 5/26, 8/11, 9/06, 11/01, 11/14, 11/16, 11/23,

12/15, 12/23), in **2012** (1/18, 6/28, 7/19, 8/23, 8/30, 9/06, 10/02, 10/10, 10/11, 10/12,

10/19), in **2013** (1/28, 4/01, 5/01, 5/20, 11/14), in **2014** (1/06, 3/18, 3/21, 4/17, 4/28,

5/14, 12/09), and in **2015** (3/12, 7/23, 7/27, 9/03);[7]

54.    In January 2009, plaintiff was hospitalized in connection with a heart

condition. This matter was communicated to Branch personnel (Kathleen

Goncalves, Maria Lucia), as well to officers of the Court. Upon information and

belief, this fact also later became known to all named defendants;

55.    It is important to note that on 9/02/2009, testimony given by plaintiff

Mr. Lynch revealed discussions on 9/01/2009 between his then wife and her siblings

(Mary Sharon Nelson and Atty. James G. Wells) to possibly arrange for grave harm

to befall Mr. Lynch at the hands of some "Russian friends," or in the exact words of

defendant Laurie Wells, "Jim, I don't need to be in jail, otherwise I'd take you up on

it . . . or maybe just maim him." In spite of the serious nature of these revelations,

which Mrs. Lynch denied, but for which Mr. Lynch produced an audio recording

precluded from evidence, the Trial Court judge (Howard T. Owens, Jr.) made no

change in the shared living arrangements of the parties;[8]

---

[7] Asterisk (\*) denotes dates for meetings with Family Relations counselors, no transcript available.

[8] The audio is now in the possession of the Trumbull Police Department ("TPD"). Curiously, defendant Laurie Wells filed her <u>first ever</u> complaint with the TPD against her husband on 9/05/2009 at 11:23pm, just 3 days after the allegations against her came to light in court. The single page report (#0900013140-00073979) notes, in part, "Ms. Lynch felt that her safety at home was in jeopardy, wished to document this incident for record purposes, and would not elaborate any further

56.    On 9/15/2009, judgment of dissolution entered following a trial before Judge Howard T. Owens, Jr. (JTR) which took parts of four days. The terms of said dissolution were enumerated in a Memorandum of Decision dated 9/14/2009, filed 9/15/2009, also incorporating as orders the terms of a Parenting Plan Agreement which ordered an <u>equal sharing</u> of both joint legal and physical custody (e.g. – <u>50/50 custody</u>/parenting time). Financial orders were appealed by plaintiff;

57.    Just days after filing his appellate papers, plaintiff Mr. Lynch was ordered incarcerated on 11/19/2009 by Judge Owens in response to allegations of financial contempt. The allegations were without merit, but in a blatant depravation of rights under color of law and act of intimidation, coercion, and retaliation, plaintiff was incarcerated, transported, strip-searched, and processed into Bridgeport's North Avenue prison. He was without either of his required medications;

58.    Defendant Portanova, P&R, and others from the Judicial Branch had conspired to use plaintiff's incarceration as a means of intimidation and coercion;

59.    Also on 11/19/2009, Judge Owens solicited a motion from counsel representing the former Mrs. Lynch, as to a change in the post-judgment living arrangements provided for in his 9/14/2009 Decision. The parties had lived together with their children during the divorce, by agreement and made an order of the Court on 12/11/2008. That agreement was preserved in the 9/14/2009 Decision;

---

regarding her request." TPD provided information about the Office of Victim Services and urged her to contact them. On 10/15/2009, Ms. Lynch filed a second complaint with the TPD against Mr. Lynch. When asked by TPD if she had ever contacted OVS as recommended, she stated she had not.

60.     Following hearings on 12/10/2009 and 2/09/2010, plaintiff Mr. Lynch was ordered to vacate the former marital residence, which had also served as his place of business since 1998. His physical custody obligations remained unchanged. False claims regarding an alleged, but non-existent DCF complaint were ignored;

61.     On 5/18/2010, plaintiff Mr. Lynch vacated his home – also his office, disrupting his business and making it virtually impossible for him to comply with the myriad of financial orders and the unchanged Parenting Plan Orders which required he provide a separate home for his daughters 50% of the time. This hastened Mr. Lynch's financial hardship and insolvency, indirectly harming numerous other businesses, family members, and friends in the process;

62.     On 8/26/2010, defendant Portanova (P&R) was summoned to a meeting with opposing counsel (Goldstein) in chambers with Judge Owens in connection with the divorce action. Owens was now aware of a judicial complaint letter filed against him by Mr. Lynch. Details of this meeting were never disclosed to plaintiff Mr. Lynch, but P&R did communicate in writing that, "Judge Owens will not be disqualifying himself under no circumstances." (sic) Curiously, the very next morning, defendant Portanova (on behalf of P&R) sent an email to his then client, Mr. Lynch, noting his intent to end the attorney-client relationship;

63.     Subsequent to the email exchange of 8/27/2010, defendant Daniel D. Portanova, in an attempt to extort payment, verbally and physically threaten his then client plaintiff Mr. Lynch, at the offices of P&R, raising his finger to within inches of Lynch's face and stating, "You have no idea who you're f**king with;"

64.   On 10/05/2010, plaintiff's then legal counsel, the firm of Portanova and Rutigliano, P.C. ("P&R") and Atty. Daniel D. Portanova, filed a motion for permission to withdraw as counsel in the divorce action;

65.   On 10/28/2010, following a very brief hearing, Judge Owens, in conspiracy with Atty. Portanova, granted the motion to withdraw and this plaintiff, also plaintiff in the underlying divorce, was ordered to file a pro se appearance;

66.   On 12/02/2010, the law firm of Portanova and Rutigliano P.C., through Green and Gross, P.C. and Atty. Eric Gross, commenced an aggressive civil collections action against this plaintiff. Said action. filed at 1061 Main Street, Bridgeport Superior Court, was assigned case number FBT-CV-10-5029394-S and was later claimed for jury trial which ultimately occurred in 2014;

67.   The Court at Bridgeport, Bellis and Thim, ordered the civil action forward even though the underlying divorce action remained unresolved on appeal;

68.   From 12/02/2010 through the current date, defendants Portanova, P&R, Gross, G&G, Whitcomb, DMOC, and Doe Insurance Company, individually and in conspiracy with one another, and with others named and unnamed, including, but not limited to defendant's Bellis and Thim and other Branch employees, through an abuse of process, and through acts and omissions, exploited the legal machinery of the Courts to hasten plaintiff's indigence and ultimately cause his homelessness, and knowing that said acts and omissions did repeatedly inflame his disabilities;

69.   In connection with the above mentioned civil collections action (which also resulted in a malpractice counter claim), this plaintiff personally appeared at

Judicial Branch facilities on various dates, including but not limited to in **2011** (2/14, ___), in **2012** (4/23, 4/30, 10/09), in **2013** (1/31, 2/14, 2/19, 3/14, 7/09, 8/20), in **2014** (4/29, 5/20, 5/28, 5/29, 6/03, 6/04, 6/05, 6/19, 7/15, 7/22, 7/23, 7/24, 7/29, 7/30, 7/31, 8/05, 8/06, 8/07, 8/12, 8/13, 8/14, 8/19, 8/20, 8/21, __, 10/07), and in **2015** (2/27);

70.    Even though this action included a clearly stated claim of emotional distress, at no point did any of the named defendants offer to Mr. Lynch an accommodation, which is an affirmative obligation under the ADAAA;

71.    Throughout 2010, 2011, 2012, 2013 and the 2014 trial, Lynch endured repeated and escalating acts of harassment, interference, intimidation and retaliation on the part of P&R, Portanova, Gross, G&G, Whitcomb, DMOC, funded in part by the Doe Insurance Company, and assisted by other employees of P&R, G&G, DMOC, and the Judicial Branch who knew or reasonably should have known the effects same were having on a qualified individual with disabilities;

72.    In 2012, plaintiff briefly retained the services of experienced counsel in an effort to reach a mediated settlement, but said efforts were met with aggressive and dilatory tactics on the part of P&R, Portanova, G&G, Gross, DMOC, Whitcomb, and others from the respective law firms, supported by Doe Insurance Company;

73.    Upon information and belief, Doe Insurance Company, through regular and repeated contact with P&R, Portanova, G&G, Gross, DMOC, and Whitcomb, knew or reasonably should have known that its' clients actions were the proximate cause of initial injury to plaintiff Mr. Lynch, as well as sustained and increased injury as the action progressed, but failed to take action to prevent same;

74.   On or about 4/23/2014, plaintiff Mr. Lynch requested reasonable accommodations for modifications, in writing, from the Judicial Branch and, in particular, defendant Lovallo. Through subsequent discussions by phone, in person, and via email, Lynch educated Lovallo regarding the detailed nature of his disabilities, and his needs relating to modifications of Branch services. Although initially reassured that modifications would be made, said requests were denied. The only suggestions for purported 'relief' directed plaintiff back to the judge presiding over the proceedings for a given action, placing non-discrimination and needed accommodations under adversarial attack and at judicial discretion;

75.   Even though the Judicial Branch had an affirmative obligation as early as 5/30/2008 to identify and offer reasonable accommodations to plaintiff Mr. Lynch, it failed to do so and he remained completely unaware of same until April 2014. Prior to that time, he failed to have full and equal participatory and testimonial access to proceedings which he was required to participate in, most often even without the benefit of counsel due to his financial circumstances and the Court's continued refusal to grant any meaningful financial relief or counsel;

76.   Since his first request for reasonable accommodations, plaintiff has made more than a dozen formal and respectful requests in his attempts to seek full and equal access to the services, programs, and activities of the Judicial Branch. Said request have been consistently been met with denials, delays, procedural hurdles, and a range of humiliating and harassing activities at the hands of one or more named defendants and other yet-to-be-named employees of the Branch. The Branch

repeatedly violated a range of ADAAA mandates as to same, often shifting or attempting to shift the legal, administrative or financial burden back to Mr. Lynch;

77.    On or about 12/29/2014, a civil foreclosure action regarding the former marital residence was filed at the same Judicial Branch location where the divorce and civil collection actions were tried (1061 Main Street, Bridgeport CT). This matter was assigned case number FBT-CV-15-6047655-S and captioned as Central Mortgage Company v. Lynch, Daniel M, et al. Co-defendants in that matter include this plaintiff's former wife, Laurie W. Lynch (a.k.a Laurie Wells Lynch, Laurie Wells or Laurie Marie Wells), the law firm of Portanova and Rutigliano, P.C., and the United States of America (Internal Revenue Service);

78.    In connection with the above mentioned civil foreclosure action, plaintiff personally appeared at Judicial Branch facilities on various dates, including but not limited to in **2015** (6/01, 6/29, 7/08);

79.    On or about 1/28/2015, Mr. Lynch had removed this foreclosure matter to U.S. District Court at Hartford (3:15-cv-00118-VLB), but said matter was subsequently remanded back to the state court on or about 3/27/2015;

80.    Upon remand of the matter to the Connecticut Superior Court at Bridgeport, Mr. Lynch filed a motion to dismiss on 4/30/2015 claiming, among other things, a lack of personal jurisdiction, noting the prolonged failures of the Judicial Branch to comply with the Americans with Disabilities Act Amendments Act. On 7/20/2015, he also filed motion for leave to amend said motion to dismiss;

81.  Although that Court has not yet addressed the aforementioned motion to dismiss or request to amend, it has issued further other orders in response to motions filed on behalf of Central Mortgage Company by its' attorney's, defendant Hunt Leibert Jacobson, P.C. (and attorney's Forcella and Staskiewicz) which substantiate the claims of discrimination made by Mr. Lynch in said motion;

82.  Upon information and belief, defendant's Jennings, Bellis, and Adelman are among those conspiring to ignore plaintiff's claims in said motion to dismiss and instead use post judgment proceedings in the family matter as a means to avoid responding to claims of disability discrimination, retaliation, and fraud;

83.  Through acts and omissions on the part of Branch actors, as well as other named defendants, the Court's used tortuous interference to prevent Mr. Lynch from paying federal and state taxes, mortgage, rent, utility and medical bills, and other basic expenses. Same have resulted in various actions against plaintiff;

84.  On 7/23/2015, a civil small claims collection action was filed by Ms. Kristine Miklus against plaintiff Daniel M. Lynch.[9] Ms. Miklus is the former landlady of a property located at 455 Tashua Road, Trumbull, Connecticut, where Mr. Lynch lived from approximately August 2010 through and including March 2014. Said residence also served as Mr. Lynch's place of business, as well as the half-time home of one minor daughter. An older daughter, a full-time college student in Boston, had a room in this house, but only stayed or visited infrequently;

---

[9] Daniel M. Lynch is also referred to as either Daniel Lynch or Dan Lynch. He is plaintiff in this action, as well as the 2009 dissolution of marriage action, but is the defendant in the 2010 civil collections action, the 2014 foreclosure action, and the 2015 small claims action all noted herein.

85.    On 8/18/2015, Mr. Lynch filed a motion to dismiss this action, claiming a lack of personal jurisdiction based on the Judicial Branch's long-standing non-compliance with provisions of the Americans with Disabilities Act Amendments Act, combined with the fact that he is a qualified individual with disabilities who has been repeatedly denied full and equal access to the programs, activities, and services of the court. The motion was supported by a detailed memorandum of law (as required by local rules), as well as a sworn affidavit;

86.    Also on 8/18/2015, Judicial Branch employee and defendant in this action, Magistrate Judith Rossi, summarily denied this plaintiff's motion, without a hearing as to the personal jurisdictional issues raised. The Court has also ordered an answer date of 9/08/2015, yet has ignored the claimed jurisdictional issue;

87.    On 8/27/2015, plaintiff Mr. Lynch filed a motion for clarification on the Court's denial and further orders, emphasizing his claims under the ADAAA. Rather than respond to the questions raised, the Court subsequently gave notice stating, "If [Mr. Lynch] wants to request a specific accommodation due to a disability, the courts ADA coordinator will review it. A Motion to Dismiss for lack of Personal Jurisdiction is not the proper vehicle to assert that Plaintiff's disability was not accomodated (sic) in this case" (Rossi, M), 9/01/2015;

88.    This plaintiff has since received a notice of a hearing on 9/25/2015, yet has still failed to address the claim of lack of personal jurisdiction, clearly and plainly raised, citing a violation of his Constitutionally protected rights;

89.    On 4/28/2015, following repeated denials by the Branch to secure digital audio copies of official court proceedings as ADA accommodations, plaintiff filed a related claim with the Office of State Ethics against defendant's Rogers and Carroll, both of whom had specific, first hand knowledge as to related improprieties and ethical violations which this plaintiff believed were the foundation of repeated denials. The complaint was dismissed for lack of jurisdiction, and a separate petition was similarly dismissed for the same reason. It seemed that plaintiff had no legitimate recourse to secure a mechanism for <u>full and equal</u> participation;

90.    Since December 2012, plaintiff has had to defend against post judgment motions in his dissolution action, as well as participate in various trial court and reviewing court services, programs, and activities of the Judicial Branch, even though he has been prevented from full and equal participation as to same;

91.    On various dates from 2010 though and including 2015, plaintiff filed judicial, attorney, and other complaints seeking redress to issued noted herein;

## COUNT I: Discrimination, Violation of Due Process and Equal Protection (Amendment XIV, U.S. Constitution), 42 U.S.C. § 12101, et seq.

92.    Plaintiff hereby incorporates by reference within this section all prior paragraphs of this Complaint as if fully set forth herein;

93.    This count as to all named defendants;

94.    The State of Connecticut Judicial Branch is a public entity as defined by 42 U.S.C. § 12131 and 28 C.F.R. § 35.104. Upon information and belief, it has received and continues to receive federal funds in connection with the services, programs, and activities offered to the public which it serves;

95.    As "Commissioners of the Superior Court" and "Officers of the Court," all attorney and law firm defendants, including Doe Insurance Company, share in the Title II obligations of the public entity, in addition to Title III obligations which they may have under relevant statutory authority as may exist;

96.    In September 2009, Branch employee DiPentima, as Chair of the Public Service and Trust Commission, authored a "Phase Two Implementation of the Strategic Plan" report for the Judicial Branch.[10] Most relevant to this complaint is the plans goals relating to Americans with Disabilities (pp. 10-15), wherein it re-defines and limits the scope of "disability" to accommodate only "individuals with physical disabilities and the elderly." This most fundamental failure in the planning stages to accommodate all individuals, including those with mental (or so-called 'hidden') disabilities, is indicative of the systemic problems of discrimination being faced by this plaintiff and many others so challenged;

97.    On 7/08/2014, Branch employees Carroll, Ciarciello, Gines, Smith, D'Alesio, and Irace were among those from the Branch present for a meeting of the Advisory Board on the Americans with Disabilities Act. At this and other meetings, "New ADA Auxiliary Aids Signage" was discussed, subsequently being approved and posted in Judicial Branch facilities. The signage, featured on page 5 of the July 2014, report to Chief Justice Chase T. Rogers, once again demonstrates how mental disabilities are being ignored by the Branch. Of the five "universal symbols" and textual descriptions shown, nothing indicates that qualified individuals with mental disabilities can reasonably expect accommodations. Plaintiff notes that such a "universal symbol" <u>does exist</u> for those with mental health needs;

98.    A report issued January 2015, prepared for the Judicial Branch by third-party vendor, The Center for Research & Public Policy ("CRPP"), details further support of plaintiff's claims herein. Said report notes, among other findings, that of 1,000 respondents contacted between 12/10/2014 and 1/07/2015, just 10 individuals (or 1%) had contact with an ADA Coordinator. This is a sharp contrast to the 116 (or 11.6%) who reported having a disability (besides eyeglasses). In this example, the Branch's own survey suggests that the <u>overwhelming majority</u> of disabled family court patrons had no contact with an ADA Coordinator;[11]

99.    On 04/23/2014, plaintiff filed a written request for accommodations by persons with disabilities (Branch Form JD-ES-264). Said request was personally

---

[10] Source: http://www.jud.ct.gov/committees/pst/PST_Phase2_Implementation.pdf
[11] Source: http://www.jud.ct.gov/family/Family_Matters_Satisfaction_Study.pdf  Allegations as to the fraudulent nature of survey results seeking to mislead the public, are discussed elsewhere herein;

hand-delivered to defendant Lovallo at the 1061 Main Street, Bridgeport CT Branch location and specified civil docket #FBT-CV-10-5029394-S and two upcoming dates for which accommodations were needed (4/29/2014, 5/28/2014). Per verbal direction of Lovallo, plaintiff did not submit a separate form for family docket #FBT-FA-08-4024947-S, but also indicated the same accommodations would be needed in that case pending at this same location. While no written reply was provided to Form JD-ES-264,[12] Lovallo did explain verbally why 'real-time transcriptions of proceedings' would likely not help given disabilities as fully disclosed. After a detailed discussion between plaintiff and Lovallo regarding needs as they related to the nature of the disabilities, plaintiff stressed his need for an audio record of the proceedings so he could listen to them as many times as needed, pausing and rewinding as often as is necessary, so that he could fully understand same. Lovallo indicated he would follow-up after he had "spoken with others in Hartford." No follow-up occurred, nor were any accommodations offered or provided;

100.   The Judicial Branch, boldly and falsely, proclaims itself in compliance with the ADA, when it is not so compliant and reasonably should know it is not. These claims are made in traditional print, online (Internet), and in verbal testimony;

101.   On 5/14/2014, plaintiff appeared before Judge Klatt at Bridgeport in connection with a post-judgment motion in his divorce action. During said hearing, Klatt deprived plaintiff of his basic 14th Amendment rights to due process of law and equal protection under the law. She failed to allow a full and fair hearing,

---

[12] No written responses were initially received, only upon later written complaint regarding same.

refused to allow plaintiff to call a witness or introduce materially relevant evidence, and she placed numerous knowingly false statements onto the court record which directly contradicted controlling law of the case, as well as the true court record which she had repeatedly claimed to have reviewed prior to the hearing.  For a substantial portion of this hearing, a large judicial marshal was positioned just an arms length or two behind this plaintiff, in an apparent attempt to intimidate and inflame his disabilities. Upon information and belief, this marshal, a Branch employee, was so positioned at the direction of Klatt. This depravation of rights under color of law was part of a continuing course of conduct from this Branch jurist that had persisted for more than two years;

102.   On 5/20/2014, plaintiff appeared before Judge Bellis in a hearing regarding a pending civil jury trial. During said hearing, Bellis spoke in an unnecessarily aggressive tone and threatened plaintiff with marshals, both things he had specifically discussed with the ADA Contact Person as being among triggers for his disabilities. When plaintiff, responding to an inquiry from Bellis, stated on the record, "I do not appreciate the Court's threatening me with a marshal. I've been respectful to the Court and - " he was cut off by Bellis, "All right, sir. I'm going to take – a recess. Get a marshal."  When the matter was recalled, there were two marshals positioned in the courtroom in a manner obviously meant to intimidate the plaintiff and interfere with his ability to fully and equally participate in the services, programs, and activities of the Judicial Branch;

103.   On 5/20/2014, plaintiff Lynch filed a brief complaint via the ADA Web site complaint process (ada.complaint@usdoj.gov). He also sent signed electronic copies via email to Atty. John Hughes (New Haven, CT). With the exception of the automated email reply, no other response was ever received by Lynch;

104.   On 5/27/2014, plaintiff filed an appeal in connection with the recent proceeding and judgment of defendant Judge Klatt, pursuant to C.G.S.§ 52-265a, seeking a direct appeal to the CT Supreme Court based on the trial court's continued violation of basic due process rights. The direct appeal was denied (having been improperly filed) and was not transferred to the Appellate Court;

105.   On the morning of 5/28/2014, the specific hearing date for which plaintiff had originally requested accommodations; he filed a second formal request for accommodation by persons with disabilities (JD-ES-264). This more detailed complaint emphasized the need for some audio, video, or written transcript at the conclusion of the hearing, among other requested accommodations. Said request also made special note of recent hearings (5/14/2014, 5/20/2014) during which an increased marshal presence appeared to be used in a manner which was unnecessary, but instead designed to intimidate and threaten plaintiff;

106.   Upon hand-delivering the above mentioned request to defendant Lovallo, plaintiff requested a private place where they could discuss the requests being made in light of plaintiff's disabilities. Lovallo declined and plaintiff was compelled to speak to him through a protective glass barrier window in the public clerk reception area where other members of the public could easily hear all details of plaintiff's

disabilities and needs related thereto. During this session, Lovallo, on behalf of the Branch, indicated verbally that he could not grant any items being requested and even made a knowingly false representation, stating that audio recordings of hearings are not retained, even though plaintiff knew from prior experience with the Branch that such records are maintained. No written reply to plaintiff's second request was provided at this time and he was compelled to appear before the presiding judge, and a trial judge in connection with his civil matter without his requested accommodations, thereby once again preventing him from having full and equal testimonial and participatory access to the proceedings;

107.   In the first of two hearings on 5/28/2014, plaintiff appeared before defendant Bellis (presiding judge of civil mattes at Bridgeport). As the indigent, self-represented litigant defending against a civil action commenced by his former divorce counsel (P&R and Portanova), plaintiff was now compelled to participate in court proceedings <u>without his reasonable accommodations</u> and, therefore without the ability to fully and equally participate in same. He clearly noted this on the court record, "I have twice filed requests for accommodations through ADA, and without my accommodations I have no – no testimonial or participatory access to these proceedings. It's a violation of my federal civil rights guaranteed under the ADA." [Tr. 5/28/14, p.3] Opposing counsel, (Jonathan Whitcomb), on behalf of his client, challenged plaintiff's request for any reasonable accommodations. "Your Honor, may I interject . . . this case has been going on for almost two years, or more

than two years, and we have never heard of any ADA issue from Mr. Lynch. We view – it as dilatory." [Remarks by Atty. Whitcomb, Tr. 5/28/2014 at pp. 8-9)[13]

108.   After a brief recess in the above mentioned hearing, defendant Bellis first stated on the record that "it's not for me – it's not appropriate for the Court to – to rule on your ADA request. It would be improper and inappropriate." [Id. at p. 11] Upon information and belief, defendant Bellis was holding in her hand and reading from a copy of plaintiff's 5/28/2014 accommodation request form as filed with defendant Lovallo who was now present in the courtroom. Bellis indicated, on the record, that she had spoken with Judge Thim, trial judge scheduled to commence pre-trial and trial hearings later that same day. Bellis detailed on the court record what the Branch could and could not provide and gave a near point-by-point recitation based on plaintiff's accommodation request form. Defendant Bellis further advised plaintiff on the record that if he was dissatisfied with the Branch's response to his accommodations request, Lovallo would provide grievance complaint details.   Other than the court record, no written reply to the 5/28/2014 request form was timely provided as required by ADA regulations;

109.   Following discussion of plaintiff's ADA accommodations request, Bellis compelled plaintiff's immediate response on a matter just raised *sua sponte* and also by motion of defendants P&R and Portanova, through counsel. Not only was that very scenario one of the specific items raised in plaintiff's ADA accommodation

---

[13] Plaintiff notes that his former attorney (Daniel D. Portanova) and the law firm of Portanova and Rutigliano, P.C. knew of his record of disabilities as early as 2008 and that his attorneys also had knowledge of same given Lynch's claims of emotional distress.

request, but fundamental due process rights required that plaintiff be provided sufficient time to respond, even if he did not suffer from any disabilities. Plaintiff Lynch cited, on the record, the case of *Costello v. Costello*, 186 Conn. 773 (1982) [Tr. 5/28/2014 at p. 16], but defendant Bellis, on behalf of defendant Judicial Branch, ignored his needs and ruled on the instant motion.

110.   Also on 5/28/2014, defendant Lovallo, acting on behalf of defendant Judicial Branch, provided plaintiff Lynch with a tri-fold grievance complaint brochure for Branch employees (JDP-ES-267 Rev. 10/11). Said brochure provided details solely as to the complaint procedures for employees of the State of Connecticut Judicial Branch (e.g. – Title I), and not for the general public using the services, programs or activities of the Judicial Branch (e.g. – Title II). Plaintiff was not seeking employment with the Judicial Branch, he was being <u>compelled</u> to participate in services, programs, and activities even when the Court lacked personal jurisdiction over him through its' non-compliance with the ADAAA;

111.   During a second hearing, also on 5/28/2014, before Judge Thim, plaintiff Lynch was required to participate in pre-trial proceedings <u>without any of his requested accommodations</u>. Even though he had an appeal of interlocutory orders pending, seeking to prevent irreparable harm, and a valid automatic stay of proceedings was provided by the Rules (and cited on the record by Lynch), the court ignored same and commenced proceedings. More than two dozen pleadings were considered and ruled upon <u>at a dizzying pace</u>, one which seemed to challenge even experienced counsel. For a self-represented party with certain disabilities as known

to the Court, and without any of the accommodations requested, this burden was insurmountable. The transcript of said hearing yields many examples of plaintiff's request to have things repeated because he could not keep up with the fast pace of the proceedings. The Judicial Branch and counsel seemed to revel in frustrating the obviously struggling plaintiff;

112.   In spite of numerous requests as early as 4/23/2014, plaintiff was not provided with any record of the above mentioned proceedings until 12/29/2014, <u>more than seven months after the hearing occurred</u> and well after the point that the record of the hearing could help him recall events for use during trial or during his earlier preparation for same. <u>This is blatant discrimination</u>, both based on plaintiff's disability, but also his class as a pro se litigant. Plaintiff had repeatedly requested audio as his chosen accommodation (primary consideration), but was either denied same or re-direct to typewritten transcripts. He notes that the latter of these options generate additional compensation for Branch employees and, upon information and belief, was the primary reason the Branch was continuing to deny this expressed primary consideration which it easily had to capability to provide;

113.   On May 29, 2014, and continuing to June 3rd, 4th, and 5th, plaintiff Lynch was required to participate in a lengthy jury voir dire selection process, <u>without his requested accommodations</u>. The typed transcripts for these dates, finally provided to plaintiff in 2015, contain similar objections to proceeding without his reasonable accommodations. It is important to note that defendants Judge Bellis and Atty. Lovallo denied through administrative ADA channels, this plaintiff's request to

make his own audio recording or to be provided with audio or written transcripts, noting he could request same through standard court procedures. Lynch did make these requests, including the request for fee waivers, and the transcripts for the above referenced four dates were provided on 12/29/2014. They were of no use to plaintiff seeking full and equal access to the proceedings at the time they occurred and in his preparation for trial (part of the services, programs, and activities of the Court). This is blatant disability discrimination and also interference and intimidation against a person seeking his right to accommodations;

114.   On 6/19/2014, at the defendant Branch facility located at 1061 Main Street, Bridgeport, Judge Thim, on behalf of the Branch, denied complainant's request for transcripts as part of a court proceeding. Defendants Bellis and Lovallo, on 5/28/2014 and other dates, had previously denied this same accommodation request through ADA administrative channels, noting the trial judge could address the requested accommodation. Thim (Judge Trial Referee), stated on the record, "You've requested a transcript of the trial proceedings. I'm not going to grant that. I don't get a transcript of the trial proceedings and in many cases the attorneys themselves -- you know, the attorneys don't get tran -- you know, overnight transcripts so I'm not going to grant that." [Tr. 6/19/2014 at p. 21] As of the date of the 6/19/2014 hearing, it had been more than three weeks and plaintiff was still seeking, but denied access to any record of court proceedings conducted on 5/28/2014, a date he had first requested accommodations for on 4/23/2014.   Plaintiff did note on the official court transcript [at p. 22] the conflicting responses from various Branch

personnel (Bellis, Lovallo, and Thim) with respect to his requested accommodations. Thim further stated, "I'm not going to order...and overnight transcript be given. If someone else looks into your - - I don't know what disability you're talking about and I don't need to know at this time I don't think. You don't - - you don't want to volunteer it so that's fine. But if you're talking with them and whatever they do they do." [Id. p. 23]

115.  On 7/11/2014, plaintiff filed via email a third request for accommodation by persons with disabilities with the Branch, through defendant Lovallo at Bridgeport. The urgency of these reasonable accommodations request was noted given a 7/15/2014 jury trial for which plaintiff was ordered to participate in, requiring him to defend himself and prosecute his counter claim, without legal counsel, without an expert witness, and without his requested accommodations which request would, among other things, provide time to access the law library, and transcripts or recordings of court proceedings;

116.  Among the items detailed on his 7/11/2014 form, plaintiff requested a mechanism whereby his Colorado-based ADA Advocate (Dr. Karin Huffer) could dial in to access the proceedings via speaker phone. While Lovallo did respond on behalf of the Branch via email on 7/14/2014, plaintiff's accommodations were not provided through administrative channels and he was, once again, instructed to make his request for accommodations with the trial judge (Thim). As will be detailed later herein, these procedures were followed in spite of plaintiff's objections, and still did not yield the accommodations required for full and equal

access to the services, programs, and activities of defendant Judicial Branch. This procedure also subjected plaintiff to further interference, intimidation, and coercion by having to present argument, fend off objections, and present an "offer of proof" on the public record as to why he needed accommodations. This is both discrimination, as well as interference and intimidation designed to inflame plaintiff's disabilities, but also to frustrate him as a self represented litigant (a discriminated class);

117.   Another requested accommodation which could have been easily granted, but was instead <u>denied</u>, was assignment of the civil trial to a courtroom equipped with side-by-side counsel tables, rather then one where defendant is placed behind plaintiff and further away from the judge. Denial forced plaintiff (as defendant in the civil trial) to sit behind a table with 3 men (defendants Portanova, Gross, and Whitcomb), who not only visually and verbally distracted Mr. Lynch, but engaged in both well-rehearsed courtroom <u>and childish antics</u> throughout trial to purposely taunt, distract, obscure the view and hearing of their opponent, but also work to inflame his disabilities to gain a tactical/strategic advantage before the jury;

118.   On 7/11/2014, plaintiff also filed an additional (fourth) request for accommodations, this one filed with the Judicial Branch and Atty. Smith, the designated ADA Contact person for the Appellate Court, 231 Capitol Avenue, Hartford CT, for matters pending before that court;

119.   On 7/11/2014 (9:51am), Smith replied to plaintiff's request for accommodations with the Appellate Court. The written response, delivered via electronic mail, denied each of the five (5) accommodations requested;

120.   On 7/14/2014, plaintiff filed a motion with the Court at 1061 Main Street, Bridgeport CT (defendant Judicial Branch), seeking to preclude any evidence or testimony from commencing before a jury until such time as the Branch had complied with provisions of Title 42 U.S.C. § 12101, et seq., and providing this plaintiff with reasonable accommodations as requested in writing for this location on at least 3 prior occasions. The motion, assigned docket #347.00, was essentially ignored, but later denied as plaintiff's verbal objections to proceeding without his accommodations, made on the record, were overruled. [Tr. 7/15/2014, p. 14] No qualified individual with disabilities, especially an indigent, self represented one, should have to participate in complex motion practice merely to assert federal rights already guaranteed to him or her – this is interference and intimidation;

121.   On 7/15/2014, Atty. Jonathan Whitcomb filed an objection with the Court at 1061 Main Street, Bridgeport CT (Branch) challenging plaintiff's ADA rights in public court documents and even assigning him blame for having disabilities requiring accommodations in the first place. These comments by so-called "Commissioners of the Superior Court" were and are wholly inappropriate and a clear violation of both Title 42 U.S.C. § 12101, et seq. and 42 U.S.C. § 12203;

122.   On 7/15/2014, plaintiff was ordered to participate in the first day of his civil jury trial, in the absence of his repeatedly requested accommodations. This entailed listening to opening arguments from the prosecuting attorney, having to then make opening argument, listening to follow-up opening argument from a second attorney, and then participate in a full day of direct and cross examination of witnesses.

– 42 –

Without the reasonable accommodations requested by plaintiff, it would be more than a month before he was provided with a transcript enabling him to read and comprehend what had transpired during the first difficult day of trial;

123.   Plaintiff clearly voiced his objection on the record at the commencement of proceedings on 7/15/2014, "Your Honor, I need to point out for the record that I have requested reasonable accommodations, which have not been provided by the Court. And I do not have full testimonial or participatory access to equally participate in these hearings. And I would also like to state for the record, Your Honor, that there is a Motion for Reconsideration, a fee waiver that is pending approval by the Court. And so those are noted. And a total of 37 pleadings filed- - " after which time Lynch was cut off by opposing counsel and the trial court judge (Defendants Whitcomb and Thim, respectively). [Tr. 7/15/2014, p. 14]

124.   On the evening of 7/15/2014, plaintiff Lynch was admitted and treated through the emergency room of Connecticut's Charlotte Hungerford Hospital (Torrington) in connection with his disabilities, which had been inflamed through his forced prolonged participation in Branch services without his accommodations;

125.   Even though plaintiff had filed requests as early as 4/23 and 5/28/2014 requesting audio recordings or transcripts of proceedings,[14] none would be provided for pre-trial or this first day of jury trial until mid-August 2014, after he was compelled to participate in more than twenty (20) individual proceedings.

---

[14] Plaintiff had repeatedly made his primary consideration known, that he preferred a copy of the multi-channel audio at the conclusion of each day's proceedings, but same were repeatedly denied. The ADA Technical Assistance Manual, II-7.1100, is among those areas where the obligations of the Judicial Branch were and are clear, especially where it readily had the capability to provide same.

126. On 7/21/2014, plaintiff filed a fifth request for accommodations with the Branch, the fourth to be filed with defendant Lovallo for the 1061 Main Street Branch location. Said written request reiterated the need for accommodations to ensure full and equal access to and participation in the ongoing jury trial which had commenced evidence the previous week. Prior denials had the effect of requiring plaintiff Lynch to participate in eight separate Branch proceedings without his requested accommodations, thereby violating his rights to due process and equal protection under the law. Of particular note in this instant request, plaintiff highlights a local court rule (CT Practice Book § 1-10) which appeared to provide a mechanism whereby he could at least audio record proceedings on his own;

127. Also on 7/21/2014, less than two hours after plaintiff's fifth request for accommodations was filed, he received a reply from defendant Lovallo which essentially denied ADA requests being made through this administrative process, directing plaintiff Lynch to various other court procedures for resolution (many of which can and have been denied based on 'judicial discretion.') Significant in Lovallo's reply was his challenge against plaintiff's suggestion to use C.P.B. § 1-10 as a basis for granting his reasonable request for accommodation to record proceedings. Lovallo indicated, "...it is my understanding that Practice Book Section 1-10 deals with media coverage of court proceedings . . . I do not believe that anywhere in that section it allows you, a party to the case to make an electronic recording [of] the proceedings. Of course, if you believe it does, you should file the appropriate motion with the Court." Rather than work within the Branch to assist a

litigant seeking reasonable accommodations for full and equal access to the Courts, this specially trained and designated ADA Contact Person shifts the burden <u>back to the very litigant</u> struggling to keep pace with court proceedings, further frustrating him by requiring him to research, draft, and file yet another motion to secure rights already guaranteed by the U.S. Constitution;

128.   Plaintiff Lynch responded to Lovallo's email pointing out that the avenues being suggested have still not yielded any reasonable accommodations. The Branch repeatedly attempted to shift the legal burden onto the patron, rather than meeting its' own affirmative obligation to offer reasonable accommodations which modified services, programs, and activities to ensure non-discrimination. Rather than work to resolve the issues, this designated 'ADA Contact Person' noted, "I have replied to your numerous requests both in person and in writing, and as such, no further reply will be forthcoming." To date, plaintiff had to participate in 3 pre-trial hearings without accommodations, a 4-day jury voir dire selection process without accommodations, and the first full day of evidence before the jury – all without requested accommodations. All without audio or transcription records of the proceedings, leaving the challenged litigant with only his flawed memory and illegible notes of the events as they were happening under exceptionally stressful circumstances due to the nature of his disabilities as fully disclosed;

129.   Also on 7/21/2014, plaintiff contacted the Judicial Branch, via email sent to their designated ADA Complaint Process (unnamed contact person). The email, sent to address eeo.manager@jud.ct.gov noting that the complaint brochure provided to

this plaintiff (JDP-ES-267, Rev 10/11) on 5/28/2014 by ADA Contact person, defendant Atty. Lovallo, was for judicial branch employees (Title I). Plaintiff requested ADA grievance complaint details for Title II and III;

130.   On Wednesday, 7/23/2014, the third non-consecutive day of evidence before the jury, at approximately 3:15 in the afternoon, plaintiff Lynch was asked to call his next witness, but informed Judge Thim he was extremely fatigued and need to stop, ". . . my pulse has been sustained at 120 beats a minute since I started this morning and I — and I simply cannot continue." Opposing counsel noted, "We accommodated Mr. Lynch two days last week." Lynch asked the trial judge if they could conclude proceedings for the day (having earlier been assured by both Judge Bellis and ADA Contact Lovallo that the Court would provide breaks when needed). Plaintiff's request was met with immediate interference through a challenge by opposing counsel who then made disparaging and harassing remarks on the public court record, and taunted Lynch by characterizing his request for accommodation as a "charade."  He persisted by stating on the record, purported as an offer of proof against the need for accommodations, that Lynch had no disability, that he [Lynch] had met with his daughter and parents for lunch the week prior. Such interference is specifically prohibited by 42 U.S.C. § 12203. The trial court judge denied plaintiff's request and ordered him to call his next witness. Once again, without his reasonable and necessary accommodations, this time denied as part of an adjudicative (non-administrative) process. Following these further illegal acts conspired to by multiple defendants and others not-yet-named, Mr. Lynch secured

the services of a certified ADA Advocate, Ms. Courtney LaBonte, for the following days of trial, but to no avail as she was also met with discrimination;

131.    On 7/24/2014, plaintiff filed formal notice with the Court at Bridgeport (Branch) of the discriminatory, inappropriate, harassing, and intimidating remarks made on the record as part of a civil court proceeding by defendant Whitcomb, as noted immediately above. Said notice was assigned docket #353.00. It is worth noting that defendant Judge Thim, while presiding over proceedings which involved a litigant known by the Court to be a qualified individual with disabilities, made little effort to protect him from the interference from opposing counsel;

132.    On the morning of 7/24/2014, plaintiff filed, through an ADA Advocate, his sixth request for accommodation. Unlike previous in-person requests, defendant Lovallo immediately came out from behind his glass barrier and agreed to speak with advocate Ms. LaBonte in a quiet alcove of the courthouse regarding the requested accommodations. Prior to this point, none of plaintiff's requests filed with Lovallo had been returned with signature to indicate denial, reasons for same or other information. This is further violation of requirements under the ADAAA;

133.    In a letter dated 7/25/2014, defendant Lugo Ginés (acting on behalf of the Defendant Branch) responded, denying requests for accommodations in writing, via email and U.S. Postal mail. The letter, claiming that each request has already been adequately addressed when they had not, demonstrates that the review process was and is not a genuine review of the merits of a valid need for accommodation, but rather a 'checklist item' so the defendant Judicial Branch can

cover up its own prolonged and pervasive discriminatory acts and then claim to have a multi-level review process in place. A careful review of this letter, compared against the timetable of each request and the court proceedings which Lynch was ordered to participate in without his accommodations, are evidence that <u>reasonable accommodations were not provided</u>, Lynch was discriminated against based on his disability, and disadvantaged through forced participation of Branch services without full and equal access to comprehend same. An example of the fundamental lack of understanding of litigants with hidden disabilities, Ginés letter emphasized that a complaint could be filed, but only if submitted within ten days;

134.    On 7/28/2014, plaintiff Lynch filed a motion with the Judicial Branch seeking to preclude any evidence or testimony from being extracted from his ADA Advocate, Ms. LaBonte. She had first accompanied plaintiff at proceedings on 7/24/2014 after which time he learned that opposing counsel (defendants DMOC/Whitcomb) had engaged in casual conversation during "cigarette breaks." The Advocate became concerned that the questions being posed to her about Lynch's disabilities were an attempt to secure last-minute discovery and she reported same to Lynch. This surreptitious means of obtaining information about Mr. Lynch's disability is not only a violation of professional ethics for an attorney, but a further violation of the prohibitions against interference, intimidation, coercion and retaliation as codified in 42 U.S.C. § 12203, and elsewhere;

135.    On 8/04/2014, plaintiff Lynch notified defendant Ginés via email of the absurdity of the above referenced 10-day requirement in light of the very nature of

his circumstances – an indigent, self-represented litigant with a range of hidden disabilities, being forced to defend himself against multiple attorneys in a civil jury trial without the reasonably requested accommodations. Upon information and belief, Ms. Ginés has specialized training as to qualified individuals with disabilities and was/is even involved in the Judicial Branch training for others. If she had truly assessed the underlying requests and needs, she should have been able to offer alternatives if not the primary considerations of plaintiff Mr. Lynch. It will be most instructive to review the Judicial Branch self-evaluations, required by ADAAA regulations, to see how they reviewed and assessed this situation;

136.    On Monday, 8/04/2014, plaintiff Mr. Lynch, once again through his ADA Advocate Ms. LaBonte, filed his seventh request for accommodation (modifications) by persons with disabilities. Said request also included a letter from one of plaintiff's treating physicians. This was seeking to address continued participation in Branch services (a civil jury trial) with full and equal access to participate in same. Prior requests through ADA administrative channels either denied plaintiff's requests, or directed him to make such requests on the record from either the judicial authority (breaks, permission to record audio) or to file requests with the clerk or court reporter (transcripts and fee waivers for same). While some breaks were provided, others were denied and requests for transcripts were either denied or delayed until long after the jury trial had concluded and verdict rendered, allowing the discrimination to occur by preventing Mr. Lynch to have a full grasp of the proceedings on a timely basis, then requiring him to endure further torment and

retaliation by having to pursue a lengthy and complex appeal to seek reversal resulting from proceedings which were done in violation of his guaranteed rights to due process of law and equal protection of the law. This 'death by appeal' approach has been and is being used by the Judicial Branch, to give the appearance of fairness and compliance, but in actuality it is a path for the carefully orchestrated and continued destruction of the physical and mental stability of a human being who has dared to advocate for his rights, while being publicly critical of the Branch;

137.   On 8/05/2014, plaintiff's request filed the previous day was denied, in writing, by defendant Lovallo (acting on behalf of the Defendant Branch), noting the following reason for denial, "Any party to a case may request of the Judge to limit the duration of court proceedings." This statement suggests that such a modification is possible, is available, and does not fundamentally alter a service, program, or activity of the defendant Judicial Branch, yet the Branch arbitrarily declined to provide the accommodation as part of a properly filed administrative request. Instead, plaintiff was directed to make such requests in open court, once again, as part of an adjudicative proceeding, placing the Judge in the position of responding to an administrative request as part of a judicial proceeding (and thereby removing the shield of judicial immunity). As such, plaintiff's request would be subject to interference and intimidation through objection and challenge by the opposing party, and require him yet again to having to "argue" and provide "an offer of proof" in open court as to the nature of his disability and need for such an accommodation. To this point, such requests for necessary breaks had already been denied through

this same adversarial process. It would appear that various actors representing the Judicial Branch are actually <u>using the ADA accommodation request process itself,</u> and grievance complaint procedure, as a means to compel a disabled to jump through hoops over and over and over, only to have the requests denied through both the administrative and judicial channels, when the Branch has no legal basis for issuing a denial in the first place. The Judicial Branch treats certain qualified individuals with disabilities as adversaries, not patrons in need of specialized assistance to ensure their full and equal access to services, programs, and activites;

138.    On Wednesday morning, 8/06/2014, plaintiff's ADA Advocate, Ms. LaBonte, after reaching an impasse with the local ADA Contact (Lovallo) attempted to contact defendant Sandra Lugo-Ginés, upon information and belief that Ginés was the Branch designated responsible person to ensure ADA compliance. The advocate learned that Ginés was away on vacation and that Branch employee Daniel Irace was acting in her capacity during her absence. Defendant Irace refused to speak with plaintiff Lynch's ADA advocate, instead informing her that he would only speak with the litigant directly. Ms. LaBonte returned to the courtroom, where Mr. Lynch was then required to leave his preparation for proceedings, and the three (Irace, LaBonte, and Lynch) then had a brief discussion by phone regarding the accommodations. Even after plaintiff stressed that LaBonte, as his advocate, was handling <u>all ADA matters on his behalf</u>, he refused to speak with her directly;

139.    On 8/07/2014, plaintiff filed a formal complaint with defendant Branch (delivered by electronic mail and U.S. Postal mail to defendant Graham). Said

complaint detailed these and other events as they had occurred and included materially relevant documents in support of the claims therein. It is important to note that even without his accommodations, and with an ADA grievance pending with the Judicial Branch, proceedings were ordered to continue over the objections of plaintiff Mr. Lynch and his advocate. It would not be until 8/23/2014, that Lynch would receive a response from the Judicial Branch's Human Resource Management Unit (letter from defendant Atty. Ciarciello) dismissing his complaint, allegedly after an investigation and review of same. This was two days <u>after</u> the jury had returned a verdict and plaintiff was ordered to pay nearly $132,000 to his former divorce attorney. The record is clear that the defendant Judicial Branch took every step possible to protect one or more of their own, while discriminating against and interfering with the rights of a qualified individual with disabilities;

140.    On the evening of 8/13/2014, plaintiff was once again admitted through the emergency room, treated, and kept overnight at Torrington's Charlotte Hungerford Hospital in connection with his disabilities, brought to a life-threatening level by the pressures of the proceedings and interference allowed and actually engaged in by the Judicial Branch, officers of the Court, and other named defendants. The proceedings scheduled for the following day, 8/14/2014, had to be cancelled and the jury trial resumed on the following Tuesday, 8/19/2014;[15]

---

[15] Only upon the start of evidence on 7/15/2014 did plaintiff Mr. Lynch learn that the judge assigned to preside over this jury trial (defendant Thim) did not work on Monday's or Friday's. To accommodate his honor's schedule, evidence before the jury was limited to Tuesday, Wednesday, or Thursday dates. As will be described later herein, this fact has significance given that the Branch claimed a defense of a "fundamental alteration" of its' services, programs, and activities in earlier denying one or more of plaintiff's requested accommodations.

141.    On 8/18/2014, plaintiff filed his <u>eighth</u> request for accommodations by persons with disabilities. In addition to reiterating requests for breaks and, in this case, and overnight break after the completion of evidence and before closing arguments, plaintiff also noted <u>specifically</u> that an ADA grievance complaint had been filed and was still awaiting determination. It is noteworthy that in spite of an appeal of interlocutory orders challenging due process rights and equal protection of the law, <u>and an ADA grievance complaint pending review by the Branch</u>, at no point did the Judicial Branch stay proceedings until a determination could be made by each of the two respective reviewing bodies. By the time each challenge had been responded to, the trial proceedings had concluded and the damage was done. Plaintiff Mr. Lynch is now forced to pursue remedy through a further burdensome appellate process, prolonging and further inflaming his disabilities.

142.   Numerous other violations occurred in connection with the civil collections action and counterclaim, from July 2014 through and including the current time as the matter is pending on the Appellate Court docket (AC 37137);

## Most Recent Acts and Omissions (Partial)

143.  On 7/22/2015, defendant Lynch once again requested reasonable accommodations for an upcoming hearing. In what had become an all-too-familiar adversarial response from the Judicial Branch's "ADA Contact Person" (defendant Attorney Jason Lovallo, assistant clerk for this location), the request was denied, relying on past decisions and the existence of a grievance procedure as alleged reasons for the propriety of a denial to a qualified individual with disabilities;

144.   Lynch had requested a copy of the audio upon conclusion of the upcoming proceedings. Said request was his primary consideration. The Branch responded by denying same, but offering to sell plaintiff a typewritten transcript (which would result in further delay and not address his needs). According to Lovallo, "We informed you that purchasing a transcript is available to everyone, not just people with disabilities."

145.   A typewritten transcript was not Mr. Lynch's primary consideration as expressed, and the Branch had the capability to easily provide a copy of the audio record as had been requested. As Mr. Lynch had repeatedly been found indigent, the transcript request procedure would also now entail completion of yet another updated financial disclosure statement, a process which further inflames the disability of this litigant. He was further instructed, "In order to obtain an audio copy of any court proceedings you must have a motion granted by the court." Such a statement, in and of itself, suggests the Branch has the capability to grant such a request through a judicial proceeding if it so chooses to exercise such discretion – essentially placing nondiscrimination as a discretionary act;

146.   Demonstrative of the absurdity and illegal nature of the Judicial Branch gauntlet through which it forces disabled patrons to pass, plaintiff notes recent activity in a separate civil foreclosure matter in which he is a co-defendant. This matter is also pending at the same Judicial Branch location, 1061 Main Street, Bridgeport CT. With a motion to dismiss pending which claims, in part, lack of personal jurisdiction based on ADAAA non-compliance by the Judicial Branch,

Lynch was required to attend a hearing before Judge Jennings. At this 6/29/2015 hearing, plaintiff Lynch found himself under verbal attack due to his disability and his stated needs for accommodations. Opposing counsel Staskiewicz (also defendant Hunt Leibert Jacobson by extension) aggressively interfered, ridiculed, and intimidated plaintiff, going so far as to characterize his ADA rights as a "red herring." Challenged and his disabilities inflamed, Mr. Lynch objected, but had a difficult time expressing his thoughts to Judge Jennings. The sequence of events to follow validate the claims of discrimination by plaintiff Mr. Lynch;

147.   Upon conclusion of the 6/29/2015 hearing, Mr. Lynch completed the required transcript request form and request for waiver of fees. Even though an audio recording provided on 6/29 was his primary consideration, he was denied same and told to request a transcript. On 7/07/2015, Mr. Lynch received by U.S. Postal Mail a denial of his request to waive the expense to acquire transcripts. Although the Court (Judge Michael Kamp) had found him indigent, granting a request for service of three upcoming subpoenas, it specifically denied transcripts. Lynch drove to 1061 Main Street and requested a fee waiver hearing;

148.   On 7/08/2015, Judge Kamp presided over a hearing as to the denied fee waiver. This jurist (not named in this action) noted in relevant part, "The reason, Mr. Lnch, I denied the transcript is that these fee waivers are subject to statute. As a matter of fact, the statute is identified on the form. And I just double-checked the statute again because my recollection was that there's no fee waiver revision for transcripts. There is (sic) fee waivers for other things that's allowed by statute, but

transcripts are not one of them. So I felt constrained by [C.G.S.] 52-259, 259, 259(a) (b) and (c)." Plaintiff Lynch later inquired, "Your Honor, the – and I say this as respectfully as I can, but what – what is a litigant to do who has no financial means to pay for the transcript yet needs a record of what transpired in court." The Court replied, "Well, that's a good question for which I don't have an answer. You know, I think that, again, if the legislature had – I don't know what they were thinking about when they – when they – when they were – when they created the fee waiver statute, but they did not include transcript as part of that." Lynch stressed, "There are certain needs that I have in – in having full and equal access to the Courts. I have, for a long period of time, brought that to the Court's attention. It's my view that the Court is not compliant with a number of provisions of the ADA but that's a separate matter for a different Court and a different Judge." (Tr. 7/08/2015, pp. 1-7)

149.    On 8/04/2015, nearly a month after the denied fee waiver for transcripts, and other hearings having occurred in different actions at this same location involving this plaintiff, Mr. Lynch made written request for audio records of five specifically identified hearings. The request was made by letter to Judicial Branch ADA Contact, Atty. Lovallo and noted, in part, "Given the administrative nature of my request, I respectfully ask that you please do whatever is required on your part with the Chief Administrative Judge for this location or whoever is the appropriate judge to issue an order that I be provided with an audio record of the following proceedings." The following day, Lovallo sent a written reply to Lynch, merely stating "This request for accommodation has been addressed multiple times in the

past." It also notes, "In order to obtain an audio copy of any court proceedings you must have a motion granted by the court." That was precisely what my letter had requested, through an administrative ADA process. It is wholly improper and discriminatory to require any qualified individual with disabilities to have to engage in motion practice merely to secure a reasonable accommodation which the Judicial Branch has the capability to provide;

150.   Upon information and belief, this prolonged resistance on the part of the Judicial Branch to grant audio recordings as an accommodation is <u>wilful discrimination</u> based on the Branch's desire to protect the lucrative income stream of its own personnel (court reporters, court recording monitors). As addressed elsewhere herein, this conspiracy to deprive an individual of his or her civil rights in order that a select few might gain financially is one of the more disturbing aspects of this complaint. The widespread knowledge of these discriminatory and unethical practices, which have gone unaddressed, is blatant interference;[16]

151.   On 2/27/2015, plaintiff appeared at the Judicial Branch facility, 235 Church Street, New Haven CT. Prior to the scheduled pre-argument conference called in conjunction with the appeal of the civil collections action (AC 37137), plaintiff filed a request for accommodations, once again seeking a copy of the audio record of the proceedings, but also completed a request for waiver of fees to secure the typed

---

[16] On 6/15/2012, Chief Justice Chase T. Rogers gave a presentation at the Annual Judges Meeting noting in relevant part, "Finally, legislation passed this session increasing certain court fees to provide funds directly to the Branch's technology revolving fund . . . this will enable the Branch to make [digital] audio recordings of proceedings available to the Bar and the public on the day of the proceedings and ultimately reduce the time it takes to produce a transcript and accelerate the appellate process." Source to view video: https://youtu.be/Oz-KuBQfqE0

transcript as an alternative. A male Judicial Branch personnel, John Doe 1, who would not identify himself by name, indicated that the Branch will not provide audio due to a collective bargaining issue with the Court Reporters union, noting that the sale of transcripts is how they make a good portion of their income;

152.   As of this writing, plaintiff is without <u>any record</u> of court proceedings held on 6/01/2015 (*Jennings*), 6/29/2015 (*Jennings*), 7/23/2015 (*Adelman*), 7/27/2015 (*Adelman*), and 9/03/2015 (*Adelman*). In this most recent hearing, Judge Adelman ordered plaintiff to write a brief within one week, but plaintiff has little recollection as to what the brief was to address and his own hand-written notes are so illegible resulting from the nature of his disabilities that said notes are of no use;

153.   Illustrative of plaintiff's allegations of non-compliance with the ADA, he notes the conflicting procedures in use by the Judicial Branch. It has a somewhat complex 'short calendar marking' system, whereby one litigant 'marks ready' their motion for consideration by the Court after having given notice to the opposing side of their intention to do so. On 6/24/2015, plaintiff received an email from Jonathan Adamec (employed by defendant Hunt Leibert Jacobson, P.C.) giving notice that they were "marking READY our OBJECTION TO MOTION TO DISMISS, which is on the short calendar for Monday, June 29, 2015 at 9:30 a.m. in Bridgeport Superior Court." That left plaintiff with just four days, two of which were weekend days, to notify the Court as to accommodations he would need in connection with the hearing. The policy appearing on the Judicial Branch web site regarding accommodations highlights the conundrum:

"A request for an accommodation can be made at any time. It is best, however, to make the request as far in advance as possible in order to allow time to review your request and to make arrangements for the accommodation, if needed. **You should give a minimum of ten (10) days' notice.** In emergency situations, the ten-day requirement can be waived, but you should make your request as soon as you know that you may need an accommodation. The ADA does not require the Judicial Branch to provide services or devices of a personal nature, such as wheelchairs or other mobility devices, or legal representation, secretarial services, and transportation; nor to take any action that would fundamentally alter the nature of its programs or service or impose an undue financial or administrative burden." (emphasis in original)

In response to previous accommodation requests made by plaintiff at this same location, he was denied accommodations, in part, because he had not met the requirement for 10-day prior notice. If the Court procedures for scheduling only provide <u>four</u> days, then how can a patron in need of accommodations provide <u>ten</u>?[17]

154.   On 7/27/2015, plaintiff appeared before defendant Judge Adelman for a matter that had been continued from the prior Thursday, 7/23/2015. Lynch had filed a request for accommodations, which was again denied. On 7/23/2015, he noted on the record that his accommodations would need to be in place for the Monday morning hearing, 7/27/2015. At the onset of the hearing, Mr. Lynch noted that his accommodations had not been provided – not his primary consideration or any other reasonable alternatives. After being subjected to <u>years of discrimination,</u>

---

[17] A separate, more general issue of discrimination against pro se litigants also comes to light in this example. For plaintiff to defend against this motion, he needs to put on evidence, including calling for testimony from one or more witnesses. The process used by the Branch is one where a pro se first files an application to request a subpoena or summons, and if a waiver of fee for service is needed, that must also be filed. There is often a turnaround time on a fee-waiver request of 2-4 weeks, possibly longer if a hearing on a denied request is required. Only upon approval of a fee waiver and then the application are the required subpoenas or summonses provided and service arranged. This process can easily take an entire month or longer, yet this pro se plaintiff was given just 4 days before a Monday morning hearing to address these issues.

interference, intimidation, coercion, and retaliation in this very building, Lynch finally stressed to the Court, as respectfully as possible, that he would not continue absent his accommodations which were needed to provide full and equal access to the proceedings. Judge Adelman gave Mr. Lynch two options – proceed with arguing his motion and putting on evidence or his motions would be denied. Lynch passed a copy of Title 42 U.S.C. § 12203 to the bench and to opposing counsel, but Adelman remained undeterred. Even after making clear, respectful argument to Judge Adelman, something he should not have had to do on the record to defend an absolute right granted by our U.S. Constitution and controlling federal law, Adelman carried out his retaliatory acts, denying two motions pending. Ironically, one of the very motions was a motion to disqualify, based on this jurists prior record of bias, prejudice, intimidation, and retaliation against this pro se litigant;

155.   During the 7/27/2015 hearing, Lynch even made an oral motion for an audio copy of the proceedings, expressing a willingness to go forward if the Court would order same, but Adelman denied said request;

156.   Also during either the 7/23 or 7/27/2015 hearing, defendant Goulden inquired on the record as to the nature of plaintiff's disability (42 U.S.C. § 12203);

157.   Defendant Judicial Branch, through various defendants and other personnel not named, uses a seemingly endless labyrinth of forms, procedures, requests, and hearings – each representing an additional hurdle in the path of a qualified individual with disabilities, but none which ever yield accommodations in a manner or timeframe for which they can be helpful to a struggling litigant. Providing

transcripts weeks or months after a proceeding may help address an element <u>required to take an appeal</u>, but it does not address a special need;

158.   On 9/03/2015 in a hearing before defendant Adelman, again at the 1061 Main Street, Bridgeport Branch location, Mr. Lynch was still without any record of prior post judgment hearings (7/23 and 7/27/2015) and still without approval for the reasonable accommodations he had requested. During this hearing, Judge Adelman made verbal orders directing plaintiff Mr. Lynch to draft a memorandum as to some aspect of the proceedings. Since that date, plaintiff has been entangled in a virtual game of 'cat and mouse' and he seeks a digital audio record of the proceedings, yet the Branch seems insistent on raising an ever higher bar, merely to provide him with an ability to hear and clearly recall the hearing;

159.   On 9/09/2015, this plaintiff made two separate written requests, again seeking to obtain an audio record of the 7/23, 7/27, and most importantly the 9/03/2015 hearing. One such request was directed through the Branch's established ADA administrative channels (defendant's Lovallo and Lugo-Gines), the other was by ex-parte motion filed with the Court at Bridgeport. Both requests noted that <u>time was of the essence</u> given unknown/unclear verbal orders issued 9/03/2015. Even the process of filing that motion seemed to taunt this plaintiff, refusing to accept same via email, requiring fax instead, since he was a 90-minute drive from that Court facility. Plaintiff complied. Throughout the following day, he followed up with various Branch personnel, including defendant's Lovallo and Lugo-Gines;

160.   On 9/10/2015, at 5:09pm, plaintiff received the following reply from defendant Lovallo (representing defendant Branch), "Judge Adelman has denied your motion. He wants your request to be handled via an ADA request for accommodation. I realize in a past request for accommodation in which you asked for an audio recording I stated that in order to receive an audio recording you must file a motion. That was an error on my part, and I apologize to you for that error. Your request for audio recordings can be handled via a request for accommodation. While I cannot say whether such a request will be granted, I would suggest that you file your request for accommodation as soon as possible."

161.   The above email from Lovallo is a further example of interference, given that Lynch's very letter to him the day prior requested precisely what he was now once again asking for . . . and had also filed initially with Lovallo on 7/23/2015. Nonetheless, plaintiff complied and once again provided Lovallo and Lugo-Gines with the same requests he had been making repeatedly for many months;

162.   On 9/11/2015, plaintiff received email correspondence from defendant Lugo-Gines (representing defendant Branch), now requesting "additional medical documentation" and detailing five categories of questions needing to be addressed by said "licensed health provider, who has provided treatment within the past 12 months." Plaintiff notes that his initial written requests to Lovallo and Lugo-Gines included the name and phone of one of plaintiff's doctors in the event that they had further questions. Upon information and belief, the Branch was and is familiar with

this doctor (Dr. Karin Huffer), having previously worked with her in connection with other qualified individuals with disabilities in Connecticut;

163.   A hearing is now also set for 9/24/2015, but plaintiff still has no record of the hearings from 7/23, 7/27, or 9/03/2015 which are directly relevant and has not even been provided with the means to understand and comply with a verbal order, in spite of his urgent and various attempts to secure same;

164.   Plaintiff contents that this is just the most recent example of interference on the part of the Branch, lengthening the maze and placing an ever increasing financial and administrative burden back on the qualified individual with disabilities that seeks accommodations to begin with. As of this writing, one of these hearings was more than 7 weeks ago and plaintiff has been denied any official record of that court proceeding. This is interference and discriminatory;

165.   When accessed in May 2014, at commencement of a civil jury trial, the Judicial Branch civil jury instructions, as published on its Internet web site (http://www.jud.ct.gov/) did not include, and upon information and belief, still do not include instruction or guidance to the jury as to non-discrimination on the basis of disabilities, especially those so-called 'hidden-disabilities' which were directly relevant to this plaintiff's participation at said jury trial;

**COUNT II: Interference, Intimidation, Coercion, Retaliation**
**(42 U.S.C. §§ 12203, 12133, 28 C.F.R. § 35.134, 29 C.F.R. 794a);**
**and Conspiracy as to same (42 U.S.C. § 1985, 18 U.S.C. 241)**

166.   Plaintiff hereby incorporates by reference within this section all prior paragraphs of this Complaint as if fully set forth herein;

167.   This claim as to all named defendants;

168.   Plaintiff notes that many of the acts and omissions described in prior paragraphs contain evidence of one or more elements of interference, intimidation, coercion, or retaliation as specifically prohibited by 42 U.S.C. § 12203. Even when this plaintiff attempted to educate Branch personnel, officers of the Court, and others as to the existence of this specific statute, same was ignored;

169.   As earlier noted, on <u>numerous occasions</u>, the Judicial Branch has had the ability to easily provide one or more reasonable accommodations through the established ADA Administrative process which it created, but has chosen not to. Instead, the accommodation is denied and this plaintiff was directed to request the accommodation from the judge during the adjudicative proceeding. That course of action relegates the accommodation (and the full and equal access that comes along with non-discrimination) to adversarial challenge and the whim of judicial discretion. Far worse, however, is that it has also subjected the plaintiff to ridicule and challenge on the public record as to the nature of his disabilities and need for said accommodations. Objections by opposing counsel which can be sustained or overruled, requests on the record for an 'offer of proof' as to the need for an accommodation, and other humiliating, intimidating, and coercive tactics which

serve as clear obstacles for those merely trying to have full and equal access to the services, programs, and activities of the courts;

170.   As earlier noted, defendant Whitcomb (as proxy for Portanova, P&R, and Doe Insurance Company) engaged in multiple such humiliating attacks on this plaintiff, referring to his disabilities and need for accommodations as a "charade," or requests as "dilatory" merely because Mr. Lynch did not know such accommodations were available to him. As experienced counsel and officer of the court, Atty. Whitcomb certainly knew of his own obligations, but never conveyed same to Mr. Lynch;

171.   Defendant Staskiewicz (representing Hunt Liebert Jacobson, and as proxy for Central Mortgage Company with its' own Title III ADAAAA obligations to this plaintiff), before Judge Jennings verbally attacked plaintiff Mr. Lynch, going so far as to claim his disabilities and need for accommodations as a "red herring," yet Jennings would ignore the remarks even over immediate objection by Mr. Lynch;

172.   The Branch and defendant Judge Thim, even after both verbal and written requests by this plaintiff, noted that no jury charge would include instruction about non-discrimination based on disability, because Mr. Lynch had presented no evidence as to his disabilities, even though his range of such disabilities includes very obvious physical reactions triggered by extreme stress and anxiety which are extremely similar in nature to someone diagnosed with Tourette Syndrome;

173.   The Branch and attorney defendants, including P&R, G&G, DMOC, L&G, HLJ, and Doe Insurance Company, would individually and in conspiracy with one another, use dilatory tactics to withhold documents, delay hearings, delay the

publishing of decisions or opinions to maximize the financial hardship and related stress experienced by Mr. Lynch, all in an attempt to induce submission and silence as to the attorney and judicial misconduct and discrimination which is commonplace within Judicial Branch facilities, services, programs, and activities;

174. In one clear example, defendant DMOC and Whitcomb filed a motion to dismiss counterclaim in the civil collections action. Said motion filed on 4/30/2012, bringing nearly all activity in the matter to a standstill. The Court allowing same to occur for months, in spite of actions by this plaintiff to remedy same. In a well-timed act of clear interference, intimidation, coercion, and retaliation against Lynch for pursuing his counter claim, the matter was "claimed" and "marked-ready" for hearing more than 5-months later, but scheduled to occur precisely in the middle of this plaintiff's divorce re-trial in October 2012. Such are the 'clever' antics used by these experienced legal practitioners to intentionally inflame the disabilities of a self represented opponent, attempting to cause a total physical and mental breakdown so they can each benefit financially, yet not be accountable for same;

175. Also in the civil matter, the Branch assigning the matter for trial with a judge it knew would be unavailable to address scores of motions which would be and were filed prior to the start of evidence before the jury. In spite of this plaintiff's specific requests for accommodations which had proactively addressed and warned of this very thing, the Branch failed to protect the disabled, indigent, pro se litigant, and instead ensured through its' selection of jurist that the jury trial would start without any of the motions being addressed. This merely allowed Portanova, P&R,

Gross, G&G, DMOC, Whitcomb, Doe Insurance Company and others to profit from the act of delivering a deluge of detailed legal pleading to this plaintiff, withholding all discovery from him until the eve of evidence (7/14/2014), and coordinate other acts of interference, intimidation, coercion and retaliation;

## COUNT III: Violation of Oath, C.G.S. § 1-25

176.   Plaintiff hereby incorporates by reference within this section all prior paragraphs of this Complaint as if fully set forth herein;

## As to all jurist defendants

177.   Each of the above named defendant's took a sworn oath as a judicial officer as earlier noted, in part swearing to uphold the U.S. Constitution. Article VI, ¶ 2, notes the constitution and federal laws as the supreme law of the land, requiring each of these jurists to subordinate local rules and practices to same;

178.   Federal laws and precedent protecting against discrimination of any sort are among those for which this plaintiff had repeatedly sought redress, but for which these defendants, through acts and omissions, failed to honor;

179.   Prior to becoming a jurist, each of the above named defendant's had also taken a sworn oath as an attorney to do nothing dishonest and to notify the court of any dishonest acts for which it may have knowledge. Upon information and belief, they have failed to honor this oath;

**As to all attorney and jurist defendants**

180.   The above named defendants took a sworn oath as earlier noted, in part swearing to do nothing dishonest in court and to notify the court of any dishonest acts for which it may have knowledge. These defendants, individually and in prolonged conspiracy with others, violated this oath;


**COUNT IV: Tortuous Interference**

181.   Plaintiff hereby incorporates by reference within this section all prior paragraphs of this Complaint as if fully set forth herein;

182.   As a direct and proximate result of the acts and omissions noted herein, plaintiff was prevented from meeting certain contractual obligations for which the Court had knowledge and had specifically found Mr. Lynch's testimony regarding same to be credible. Nonetheless, defendant's conspired with one another to cause the following interference:

      a. Mr. Lynch, who had faithfully paid his mortgage since 1994, including after pendente lite orders entered on 12/11/2008, was directly prevented from meeting this obligation after post judgment orders by Judge Adelman would have made it a contemptuous offense. Upon attempt to urgently address the matter through motions, Adelman in conspiracy with other Branch personnel, defendant Goulden, L&G, and others, did delay the hearing of said motion so that it would ensure default of the loan and initiation of foreclosure proceedings. Said

proceedings are now pending before the Bridgeport Superior Court as referenced elsewhere in this complaint document;

b.  Mr. Lynch, while renting a temporary residence to provide for himself and his business, but also to comply with Parenting Plan Orders, from approximately August 2010 to March 2014, did have certain monthly obligations as to rental of said residence at 455 Tashua Road, Trumbull, CT. The Court, even after finding Mr. Lynch credible as to his financial and other testimony, and knowing that his former wife had repeated failed to meet mortgage contribution payments for several years in amounts in the tens-of-thousands of dollars, refused to grant relief to Mr. Lynch or enforcement of Ms. Lynch's obligations. Mr. Lynch did gradually fall significantly behind in this obligation until he was finally forced to give up the rental residence, and has been without a home ever since;

c.  Having been self employed since 2003, Mr. Lynch had quarter tax obligations for both federal and state taxes. He repeatedly made requests of the Court as to payment of same, but the Court threatened him with incarceration, noting its orders were his first obligation above even his federal tax obligation. He was prevented from meeting his tax obligations under threat of incarceration and now is subject of both federal tax liens and levy's;

d. Mr. Lynch was further prevented from meeting numerous other basic creditor obligations, including long-time provider for fuel oil, L.P. Topar Fuel Oil, his sole credit card Capital One MasterCard, and nearly every single medical professional providing treatment to him for his physical or mental issues;

e. During the 31-month pendency of his first dissolution appeal, and under repeated threat of incarceration, Mr. Lynch had to borrow significant sums from friends and relatives, in a total amount now well into the six-figures. The Court, through continued coercion and retaliation, now attempts to strip Mr. Lynch of his home and protection through federal homestead exemption, which will cause further default to these individuals merely trying to assist a friend or relative (and adult son of elderly parents) from incarceration;

183. The Branch knew or reasonably should have known that the above harm, and resulting emotional distress, would befall Mr. Lynch and further harm an extended group of individuals, including elderly parents;

## COUNT V: Unjust Enrichment

184. Plaintiff hereby incorporates by reference within this section all prior paragraphs of this Complaint as if fully set forth herein;

185. As to Portanova, P&R, Gross, G&G, Whitcomb, DMOC, Goulden, L&G, and others not-yet-named, the acts and omissions described herein were used for personal financial gain through unjust enrichment;

### E. OTHER LAWSUITS

As earlier noted herein, this action against named defendants arises from the acts and omissions occurring throughout and within delivery of the very services, programs, and activities of the Judicial Branch and State of Connecticut required in connection with the matters noted below. Plaintiff notes that all actions described below are a direct progeny of the 2008 dissolution action for which a petition for writ of certiorari is now pending before the Supreme Court of the United States.[18]

186. **Dissolution of Marriage Action (2008)**

    a. Plaintiff: Daniel M. Lynch, Defendant: Laurie W. Lynch (now known as Laurie Wells, Laurie Marie Wells);

    b. Bridgeport Superior Court, 1061 Main Street, Bridgeport CT 06604

        Docket Number: FBT-FA-08-4024947-S

    c. Judgment entered 2009, appealed/remanded for retrial as to financial orders 2012, appellate opinion affirmed 2014, petition for certification denied 2015, petition for writ of certiorari now pending before the Supreme Court of the United States (No. 14-9858);

    d. Issues raised included: Dissolution of 1992 marriage, distribution of assets/liabilities, custody of 2 minor children;

    e. Lawsuit commenced 5/30/2008;

    f. Original judgment entered 9/15/2009, first appellate opinion 4/24/2012, 135 Conn. App. 40, re-trial judgment entered 12/13/2012, second

---

[18] Daniel M. Lynch, plaintiff in this action, is also plaintiff in an underlying dissolution of marriage action, but defendant in actions commenced against him. He is also referred to as appellant or petitioner. Unless noted otherwise, use of the term 'defendant' will reference an individual within the context of this action.

appellate opinion 9/30/2014, corrected opinion published 11/25/2014, 153 Conn. App. 208, petition for cert. denied 2/11/2015, 315 Conn. 923, petition for writ of certiori filed 5/11/2015 (now pending);

**187.   Contracts / Collection Action, Malpractice Counterclaim (2010)**

a. Plaintiff: Portanova and Rutigliano, P.C., Defendant: Daniel M. Lynch;

b. Bridgeport Superior Court, 1061 Main Street, Bridgeport CT 06604

   Docket Number: FBT-CV-10-5029394-S;

c. Appeal pending, Connecticut Appellate Court, AC 37137;

   i. A motion to vacate void orders is also pending before the Appellate Court. Mr. Lynch (plaintiff in this federal filing, but defendant-appellant in the civil action) notes that under the void judgment doctrine of the U.S. Supreme Court, no order may be rendered in violation of constitutional protections.

d. Issues raised included: Plaintiff claimed fees owed in connection with professional services rendered in the representation of client Mr. Lynch in his 2009 divorce action and post judgment, as well as reasonable attorneys fees for the collection action. Mr. Lynch counter claimed fraud, breach of contract, and malpractice. The appeal challenges a range of issues, including the propriety of commencing trial prior to disposition of the underlying divorce, and other items;

e. Lawsuit commenced 12/02/2010;

f.  Verdict accepted and judgment in favor of plaintiff entered 8/21/2014, matter remains pending before the state appellate court;

**188.   Property Foreclosure Action (2015)**

a.  Plaintiff: Central Mortgage Company, Defendants: Daniel M. Lynch, Laurie W. Lynch (now known as Laurie Wells, Laurie Marie Wells), Portanova and Rutigliano, P.C., United States of America (Internal Revenue Service);

b.  Bridgeport Superior Court, 1061 Main Street, Bridgeport CT 06604

Docket Number: FBT-CV-15-6047655-S;

c.  Motion to Dismiss pending (not yet heard);

i.  On or about 1/28/2015, Mr. Lynch had removed this foreclosure matter to U.S. District Court at Hartford (3:15-cv-00118-VLB), but said matter was subsequently remanded back to the state court on or about 3/27/2015;

d.  Issues raised included: Complaint alleges default on mortgage, motion to dismiss challenges lack of personal jurisdiction based in part on claims of CT Judicial Branch non-compliance with ADA/ADAAA, but also based on improper venue (plaintiff is an Arkansas company with no presence, office or agent in Connecticut), and lack of proper service;

e.  Lawsuit commenced 12/29/2014;

f.  Matter remains pending before the state trial court;

189. **Small Claims Collection Action (2015)**

    a. Plaintiff: Ms. Kristine Miklus, Defendants: Daniel M. Lynch;

    b. Small Claims Bridgeport, 172 Golden Hill Street, Bridgeport CT 06604

        Docket Number: SCC-584233;

    c. Motion to Dismiss pending (not yet heard);

    d. Issues raised included: Complaint alleges nonpayment of rent, motion to dismiss challenges lack of personal jurisdiction based in part on claims of CT Judicial Branch non-compliance with ADA/ADAAA;

    e. Lawsuit commenced 7/23/2015;

    f. Matter remains pending before the state trial court;

190. **Previous Lawsuits**

    a. In 2013, plaintiff Mr. Lynch was asked to join as a John Doe plaintiff in an action brought in the U.S. District Court for the District of Connecticut. He did agree and the action (No. 3:13-cv-01646-JAM), filed by New York counsel on behalf of five Doe litigants, would later be named as Dan Lynch et al v. Dannel P. Malloy;

    b. Said matter which challenged the constitutionality of Connecticut's alimony statutes, has since been dismissed;

    c. Other that the actions listed in this section above, this plaintiff has neither initiated nor defended any other previous lawsuits in this court in the last ten (10) years;

## F. DAMAGES AND REQUEST FOR RELIEF

191.   As a direct and proximate result of the acts and omissions detailed herein, plaintiff has suffered for a prolonged period, and will continue to suffer, extreme emotional distress and other health issues resulting there from; the complete loss of three decades of retirement savings and the future growth thereof; personal reputational damage; professional reputational damage; the pending loss of a home through foreclosure, including loss of significant equity and available protection there from; significant damage to his once stellar and unblemished credit rating; and infringement of his constitutional and human rights;

192.   Plaintiff reserves the right to amend or correct any errors in this complaint, including damages and requests for relief. He further reserves his right to preserve the original complaint, all pleadings, orders, decisions, exhibits, and other related documents up to the Supreme Court of the United States, if necessary;

**WHEREFORE**, the plaintiff seeks the following compensatory and punitive damages, as well as declaratory, injunctive, and other relief:

193.   That the Connecticut Judicial Branch be adjudged and declared to have been in violation of one or more provisions of the Americans with Disabilities Act Amendments Act of 2008 and/or Section 504 of the Rehabilitation Act of 1973;

194.   That the above named defendants be adjudged and declared to have violated this plaintiff's Constitutional rights;

195.    That the above named defendants be adjudged and declared to have interfered, intimidated, coerced or retaliated against plaintiff in his attempts to secure his Constitutional rights;

196.    Compensatory damages in the amount of twenty-four million, two-hundred fifty thousand dollars ($24,250,000.00);

197.    Punitive damages in the amount of thirty-one million, five-hundred thousand dollars ($31,500,000.00);

198.    Declaratory relief in the form of rulings for each of the following:

a.    A ruling to determine whether and to what extent attorneys, as 'Commissioners of the Superior Court' and 'Officers of the Court,' as well as the law firms for which they are employed, share in <u>Title II obligations and liability</u> established by the Americans with Disabilities Act Amendments Act for state and local governments (most specifically, the services, programs, and activities offered to the public through the Connecticut Judicial Branch), as separate and distinct from any Title III obligations which they may have pursuant to the relevant ADA/ADAAA statutes for same;

b.    A ruling to determine whether and to what extent the federal protections specifically provided to plaintiff by 42 U.S.C. §§ 12133 and 12203 take precedence over Connecticut's decision in *Simms v. Seaman*, 308 Conn. 523 (2013);

c.    A ruling to determine whether and to what extent provisions defined under the Americans with Disabilities Act Amendments Act of 2008 regarding *'Primary Consideration'* (II-7.1100) entitle a qualified individual with disabilities, as defined

by Title 42 U.S.C. § 12102 (*see also* 28 C.F.R. § 35.104), to obtain an audio record of court proceedings as an accommodation within a reasonable time after the conclusion of said proceeding;

d.    A ruling to determine if orders or judgments resulting from state court proceedings involving a qualified individual with disabilities who had been denied his (or her) reasonable accommodations were discriminatory and thereby violated the Fourteenth Amendment guarantees of due process and equal protection;

e.    A ruling as to the constitutionality and/or legal propriety of Connecticut General Statute § 1-79 (11), "Definitions" under the "Code of Ethics for Public Officials," which fails to distinguish between the administrative, legislative or executive functions that Connecticut jurists may occasionally be assigned to perform, as differentiated from their judicial or quasi-judicial duties, and which statute, by virtue of same, currently prevents Connecticut's Office of State Ethics from considering underlying merits of petitions or complaints which have been or may be filed regarding issues of public corruption, ethical, financial, and/or other failures by jurists while serving in one or more non-judicial roles and thereby not protected from liability by the doctrine of judicial immunity;

f.    A ruling to determine if Connecticut's failure to provide counsel to an indigent civil defendant known by the court to be a qualified individual with disabilities pursuant to Title 42 U.S.C. § 12102, violated both the First, Fifth, and Fourteenth Amendments of the United States Constitution;

199.    Injunctive relief issued in each of the following forms:

a.      An order to <u>immediately stay</u> all proceedings and enforcement of orders in any and all State of Connecticut court matter which now involve or may involve the plaintiff in this action, including but not limited to the following cases now pending: FBT-FA-08-4024947-S, FBT-CV-10-5029394-S, AC37137,   FBT-CV-15-6047655-S, and SCC-584233;

b.      An order whereby the Connecticut Judicial Branch shall, within seven (7) calendar days thereof, <u>cease and desist</u> from proclaiming compliance with the Americans with Disabilities Act (ADA), in all traditional print and electronic/online media, until such time as this Court has fully adjudicated all claims as detailed within this complaint and any other ADA-related claims that are now pending or may be filed against the Connecticut Judicial Branch during such time as this claim remains pending;[19]

c.      An order requiring <u>all defendant's</u> immediately take every reasonable precaution to safeguard and prevent the destruction, mutilation, deletion or modification of <u>any</u> records or documents, whether paper or electronic, that could reasonably be construed to be connected to the matters as set forth herein. This specifically includes, but is not limited to traditional letters or email correspondence, business records, bank or other financial records, contracts,

---

[19] The Judicial Branch Web Site (http://www.jud.ct.gov) and most Judicial Branch Forms, brochures, and documents, state: "The Judicial Branch of the State of Connecticut complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation in accordance with the ADA, contact a court clerk or an ADA contact person listed at www.jud.ct.gov/ADA/"

invoices, receipts of payment, statements for any debit, credit or charge accounts used in connection with matters described herein, motions, pleadings, briefs, and other similar documents (paper or electronic), and electronic backup of computer systems and/or data extracts;

d.      An order requiring defendant Daniel D. Portanova to disclose the name(s), address(es), and contact details for his malpractice insurance carrier(s) which provided coverage to him and/or the firm of Portanova and Rutigliano, P.C. from December 2, 2010, and at any time through the present date;

200.   Attorney's fees and costs arising under all relevant statutory authority, including but not limited to the cost for all depositions, transcripts, expert witnesses, related travel, service of notice, and costs to print/copy and distribute discovery requests and responses in connection with this action;

201.   Such other relief as this Court deems just and equitable given the facts and circumstances of this case.


### G. JURY DEMAND

Plaintiff demands a jury trial in connection with this Complaint.


THE PLAINTIFF,
Daniel Lynch

By:

Daniel M. Lynch                    15 SEP 2015
P.O. Box 40
Trumbull CT  06611-0040
Phone: (203) 520-2020
Email: dan@danlynch.net

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained in the complaint is true and correct.  28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at the Town of Granby, County of Hartford,
State of Connecticut on this 15th day of September, 2015.

Daniel M. Lynch
**Plaintiff's Original Signature**