```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

DANIEL M. LYNCH,                   :
                                   :
     Plaintiff,                    :
                                   :
     v.                            :    CASE NO. 3:15cv1379(AVC)
                                   :
STATE OF CONNECTICUT JUDICIAL      :
BRANCH, ET AL.                     :
                                   :
     Defendants.                   :
```

RECOMMENDED RULING

Plaintiff, Daniel M. Lynch, brings this action against defendants, State of Connecticut Judicial Branch, numerous state judges, judicial branch employees, private attorneys, law firms, John Does, and a "Doe" insurance company. Pending before the court is plaintiff's motion for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.[1] (Doc. #2.) Based on the financial information submitted by plaintiff, the motion is GRANTED. The undersigned recommends, however, that the action be DISMISSED IN PART pursuant to 28 U.S.C. § 1915(e)(2)(B).

I. Legal Standard

The same statute that authorizes the court to grant in forma pauperis status to a plaintiff also contains a provision that protects against abuses of this privilege. Subsection (e) provides that the court "shall dismiss the case at any time if

---

[1] U.S. District Judge Alfred V. Covello referred the motion to the undersigned on October 28, 2015. (Doc. #8.)

the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

"An action is 'frivolous' for § 1915(e) purposes if it has no arguable basis in law or fact, as is the case if it is based on an 'indisputably meritless legal theory.'" Montero v. Travis, 171 F.3d 757, 760 (2d Cir. 1999) (quoting Neitzke, 490 U.S. at 327). The "term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." Neitzke, 490 U.S. at 325. An action fails to state a claim to relief if it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . The plausibility standard is not akin to the probability that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations and quotation marks omitted).

Because "most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, [the court] must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than . . . when reviewing a complaint submitted by counsel." Lerman v. Bd. of Elections, 232 F.3d 135, 139-40 (2d Cir. 2000) (citations and internal quotation marks omitted). "In evaluating [a plaintiff's] complaint, [the court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in [the plaintiff's] favor." Cruz v. Gomez, 202 F.3d 593, 596-97 (2d Cir. 2000).

II.  Discussion

The court construes plaintiff's 80 page complaint as an attempt to set forth claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (the "ADA"), and Section 504 of the Rehabilitation Act.  He describes the nature of his case as an "action to remedy numerous violations of his civil rights, including but not limited to prolonged, willful and systematic discrimination by the Connecticut Judicial Branch, state and non-state actors, in violation of the Americans with Disabilities Act." (Compl., Doc. #1, ¶ 35) (emphasis in original.)  He alleges that defendants, by repeatedly denying him basic accommodations, "created" circumstances which led to

3

his homelessness, indigence, and development of mental health disorders.  He asserts that

> a sub-culture of organized greed, corruption, cronyism, and racketeering has been and is currently exploiting the legal machinery of Connecticut's judicial infrastructure, in part to execute a strategy of <u>sustained and systematic torment</u> against certain litigants, including those who speak out against same, are self represented or have hidden disabilities, exploiting and inflaming those very disabilities through persistent acts and omissions of discrimination.  The conduct of state actors, and officers of the court, was and is wanton, reckless or malicious in nature and it was reasonably foreseeable that same would proximately cause <u>and continue to cause</u> extreme harm to plaintiff.

(Compl., Doc. #1, ¶ 39) (emphasis in original).

  A. <u>Claims Against Connecticut State Judges</u>

  Plaintiff names eight judges as defendants in both their individual and official capacities.  These claims should be dismissed on the basis of judicial immunity.

  "Judges are immune from suit for exercising their judicial authority.  The classification of a judge's actions as judicial or nonjudicial is a question of law for the court."  <u>Patterson v. Rodgers</u>, 708 F. Supp. 2d 225, 236 (D. Conn. 2010); <u>see also Whitnum v. Emons</u>, No. 3:15-CV-959 (SRU), 2015 WL 5010623, at *2 (D. Conn. Aug. 24, 2015) ("Absolute immunity is enjoyed by judges for all acts that are judicial in nature.").  Here, all of the judges' alleged actions were in their official capacities and performed in the normal course of their duties.  <u>See, e.g.</u>,

4

Skipp v. Conn. Judicial Branch, No. 3:14-CV-00141 (JAM), 2015 WL 1401989, at *7 (D. Conn. Mar. 26, 2015) (finding that "[n]o exception to judicial immunity applies . . . [where] the allegations against the judges relate to actions taken in their capacity as judges, rather than to actions in their personal or non-judicial capacity or to actions taken in the complete absence of jurisdiction.").

     B. Claims Against Judicial Branch Employees

Plaintiff's allegations against the judicial branch employees[1] also should be dismissed because they are barred by immunity.

"When court employees perform official duties integral to the judicial process, undertake actions pursuant to a judge's direction, or implement judicial orders, they are entitled to quasi-judicial immunity of the same character as the immunity enjoyed by judges." Skipp, 2015 WL 1401989, at *8; see also Rodriguez v. Weprin, 116 F.3d 62, 66-67 (2d Cir. 1997) (explaining that "the same policies underlying immunity for judges also justify a similar grant of immunity to clerks for performance of tasks which are judicial in nature and an integral part of the judicial process" and even for "functions that are more administrative in character [that] have been

---

[1] Plaintiff includes "Judicial Branch personnel" as John Doe defendants. (Compl., Doc. #1, ¶ 29.)

undertaken pursuant to the explicit direction of a judicial officer." (internal quotations marks and citation omitted)).

Connecticut General Statutes § 4-165(a) provides additional protection to state employees sued for alleged conduct arising within the scope of their employment.  "No state employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."  See Bourguignon v. Armstrong, No. 3:06CV259 (WIG), 2006 WL 3791399, at *5 (D. Conn. Dec. 8, 2006); see also Wilson v. McKenna, No. 3:12-CV-1581 (VLB), 2015 WL 1471908, at *6 (D. Conn. Mar. 31, 2015) (granting defendants' motion to dismiss, finding that "plaintiff cannot recover damages from the State of Connecticut or the [state official] defendants in their official capacities").  Here, all of the alleged actions of the judicial branch employees were within the scope of their state employment and thus, they are protected from an award of damages against them.

C. Private Attorneys, Law Firms & "Doe" Insurance Company

Plaintiff claims, without offering specific allegations, that the five defendant attorneys violated their professional oath pursuant to Conn. Gen. Stat. § 1-25.[2]  He also alleges that

---

[2] Conn. Gen. Stat. § 1-25 reads: "You solemnly swear or solemnly and sincerely affirm, as the case may be, that you will do nothing dishonest, and will not knowingly allow anything dishonest to be done in court, and that you will inform the

6

the five defendant law firms and the "Doe" insurance company "individually and in conspiracy with one another, and with others named and unnamed . . . through an abuse of process, and through acts and omissions, exploited the legal machinery of the Courts to hasten plaintiff's indigence and ultimately cause his homelessness, and knowing that said acts and omissions did repeatedly inflame his disabilities." (Compl., Doc. #1, ¶ 68.) He goes on to allege that the insurance company "should have known that its' [sic] clients [sic] actions were the proximate cause of initial injury to plaintiff Mr. Lynch, as well as sustained and increased injury as the action progressed, but failed to take action to prevent same." (Compl., Doc. #1, ¶ 73.)

Plaintiff does not indicate any statute or legal theory underlying his claims against these defendants.  The court cannot discern one.  Although courts hold pro se complaints "to less stringent standards than formal pleadings drafted by lawyers," Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), plaintiff's claims set forth no arguable basis in law or fact and should be dismissed.

---

court of any dishonesty of which you have knowledge; that you will not knowingly maintain or assist in maintaining any cause of action that is false or unlawful; that you will not obstruct any cause of action for personal gain or malice; but that you will exercise the office of attorney, in any court in which you may practice, according to the best of your learning and judgment, faithfully, to both your client and the court; so help you God or upon penalty of perjury."

D. <u>Claims Against Connecticut Judicial Branch</u>

Plaintiff claims that the Connecticut Judicial Branch violated Title II of the ADA by failing to provide reasonable accommodations for his alleged disability.

The Eleventh Amendment to the United States Constitution has been construed

> to render states and their agencies immune from suits brought by private parties in federal court . . . . [Even where] the State of Connecticut is not itself named as a defendant, [t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state.

<u>Richter v. Conn. Judicial Branch</u>, No. 3:12CV1638 (JBA), 2014 WL 1281444, at *4 (D. Conn. Mar. 27, 2014) (citations and internal quotation marks omitted); <u>see also</u> <u>Daigneault v. Conn. Judicial Branch</u>, No. 3:07-CV-122 (JCH), 2007 WL 869028, at *2 (D. Conn. Mar. 19, 2007) ("The Supreme Court has long held that the Eleventh Amendment bars suits against a non-consenting state in federal court brought by a state's own citizens . . . . A claim against a state agency is essentially a claim against the state, implicating the Eleventh Amendment, because the state is the 'real, substantial party in interest.'") (citation omitted).

"Under § 5 of the Fourteenth Amendment, however, Congress may abrogate the State's Eleventh Amendment immunity . . . and has done so for claims brought under Title II of the ADA." <u>Richter</u>, 2014 WL 1281444, at *5.  In <u>Tennessee v. Lane</u>, 541 U.S.

8

509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), the Supreme Court considered whether Congress validly abrogated the Eleventh Amendment when enacting Title II of the ADA, specifically examining Title II within the context of a state's responsibility to provide disabled persons with access to courts.  The Court held that "Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment."  Id. at 533-34; Farid v. Demars, No. 9:06-CV-1545 (TJM)(GJD), 2009 WL 455450, at *7 (N.D.N.Y. Feb. 23, 2009) ("Lower courts have interpreted Tennessee v. Lane in holding that a private suit for money damages under Title II of the ADA may only be maintained against the state if the Title II violation involved a 'fundamental right' such as access to courts.").  Because plaintiff's claims against the judicial branch implicate his fundamental right of access to the courts, the court should examine whether his complaint states a claim for relief under Title II of the ADA.

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III."

Tennessee v. Lane, 541 U.S. 509, 516-17, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004).  To assert a claim under Title II of the ADA, "a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to [the ADA]; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability."  McElwee v. Cnty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012).

### 1. Qualified Individual with Disability

As to the first element, "[c]ourts apply a three-part test to determine whether a plaintiff has a disability covered by the ADA . . . .  First, the plaintiff must show the presence of a 'mental or physical impairment.'  Second, the plaintiff must show that the impairment affects a 'major life activity.'  Third, the plaintiff must show that the impairment 'substantially limits' that major life activity."  Richter, 2014 WL 1281444, at *6 (citation omitted).

#### a. Mental or Physical Impairment

Plaintiff here does not identify a specific impairment, but states that his disability is "mental (or so-called 'hidden')." (Compl., Doc. #1, ¶¶ 36, 96, 165.)

> Although the ADA does not define the term "impairment," the EEOC has issued administrative regulations implementing the ADA, which define a

10

> "mental impairment" as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h). "Under the law of this Circuit, the EEOC's regulations are entitled to 'great deference' in interpreting the ADA." Muller v. Costello, 187 F.3d 298, 312 (2d Cir. 1999).

Richter, 2014 WL 1281444, at *6. The court will assume for its analysis of the pending motion that plaintiff has satisfied his burden of showing that his condition constitutes an impairment within the meaning of the ADA. See Mabry v. Neighborhood Defender Serv., 769 F.Supp.2d 381, 400-01 (S.D.N.Y. 2011) (holding that even where "[p]laintiff has not alleged facts which show whether his condition rises to the level of a mental impairment . . . for purposes of this motion [to dismiss], this Court will assume that plaintiff has plead facts sufficient to establish that his condition constitutes an impairment within the meaning of the ADA.").

b. Major Life Activity

Courts next consider the "major life activity" affected by the plaintiff's impairment. Plaintiff here does not specifically identify any major life activity that is affected by his mental impairment. Construing his pro se complaint liberally and looking at the accommodations he sought but allegedly was denied, such as real-time transcripts, audio, video, or written transcripts of court proceedings, and the

11

ability to use his own device to record the proceedings, the complaint suggests that as a result of his mental impairment, plaintiff has difficulty comprehending and participating in court proceedings.

Plaintiff's complaint plausibly alleges a limitation on his ability to concentrate and communicate, which are major life activities as defined by EEOC regulations. See 29 C.F.R. § 1630.2(i)(1)(i); see, e.g., Richter, 2014 WL 1281444, at *7 (finding that even where plaintiff did not specifically identify major life activities affected by alleged impairment, when read liberally, complaint plausibly alleged limitation on plaintiff's ability to concentrate and communicate).

### c. Substantial Limitation

Courts also look to whether the plaintiff has pleaded facts tending to show that his impairment substantially limits a major life activity. According to EEOC regulations, "substantially limit[ed]" means a person is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j).

12

Plaintiff's complaint, construed liberally, plausibly alleges that his disability substantially limits his ability to concentrate and communicate.  See McElwee v. Cty. of Orange, 700 F.3d 635, 642 (2d Cir. 2012) (explaining that the ADA Amendments Act of 2008 ("ADAAA") "amended the ADA to provide that the definition of 'disability' shall be construed broadly 'to the maximum extent permitted by the terms of this chapter' and '[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the [ADAAA].' 42 U.S.C. § 12102(4)(A),(B)."); 29 C.F.R. § 1630.2(j)(1)(i) (instructing courts to construe the term "substantially limits" broadly).

### 2. Defendant Subject to ADA

Having determined that plaintiff's complaint pleads sufficient facts to show that he is a qualified individual with a disability, the court must consider whether the defendant is subject to the ADA.  Here, the Connecticut Judicial Branch is a public entity subject to the ADA.  Bolmer v. Oliveira, 570 F. Supp. 2d 301, 317 (D. Conn. 2008) (Congress defined "public entity" to include "any State or local government," in addition to "any department, agency . . . or other instrumentality of a State."  42 U.S.C. § 12131(1)).

### 3. Participation in Defendant's Services

Plaintiff lastly must demonstrate that he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability. Plaintiff alleges that the judicial branch denied him reasonable accommodations for his disability, and as a result, he was denied the opportunity for full and equal participation in court proceedings. Specifically, he requested, but was denied real-time transcripts, audio and video recordings of court proceedings, and the ability to use his own device to record the proceedings. His complaint explains that such accommodations would have allowed him to "listen to [the court proceedings] as many times as needed, pausing and rewinding as often as is necessary, so that he could fully understand same." (Compl., Doc. #1, ¶ 99.) Without the benefit of these accommodations, plaintiff claims that he was unable to fully and equally participate in court proceedings.

At this stage of the litigation, plaintiff's claims against the judicial branch should survive dismissal under 28 U.S.C. § 1915(e)(2)(B). Sabin v. Camp, No. 7:12-CV-1370 (GLS)(DEP), 2013 WL 785534, at *1 (N.D.N.Y. Feb. 5, 2013) ("In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants . . .

and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations.") (citation omitted); see, e.g., Simpson v. O'Sullivan, No. 09-CV-2334 JSETB, 2009 WL 3381585, at *1 (E.D.N.Y. Oct. 18, 2009) (holding that plaintiff's claims, "though sparse in their allegations, survive screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(i-iii). It may be that Plaintiff may fail to prove his claims, but the Court's uncertainty that Plaintiff will ultimately succeed on the merits is no justification for a dismissal at this stage of the case."); see also McEachin v. McGuinnis, 357 F.3d 197, 201 (2d Cir. 2004) ("The issue at this stage is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.") (internal quotation marks omitted).

III. Conclusion

For the above reasons, I recommend that plaintiff's motion to proceed in forma pauperis be GRANTED, but that his complaint be DISMISSED against all of the defendants except the State of Connecticut Judicial Branch.

Any party may seek the district court's review of this recommendation. See 28 U.S.C. § 636(b) (written objections to proposed findings and recommendations must be filed within

15

fourteen days after service of same); Fed. R. Civ. P. 6(a), 6(d) & 72; Thomas v. Arn, 474 U.S. 140, 155 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992) (failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).

Dated this 2nd day of December, 2015 at Hartford, Connecticut.

```
               _____/s/_____
               Donna F. Martinez
               United States Magistrate Judge
```