## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL M. LYNCH,<br><br>*Plaintiff*,<br><br>v.<br><br>STATE OF CONNECTICUT JUDICIAL BRANCH,<br><br>*Defendant*. | No. 3:15-cv-01379 (MPS) |

## RULING ON MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

Daniel Lynch brings this action against the State of Connecticut Judicial Branch ("the Judicial Branch"), alleging that it failed to accommodate his disability and otherwise discriminated and retaliated against him during two state court lawsuits, in violation of Title II of the Americans with Disabilities Act ("the ADA") and Section 504 of the Rehabilitation Act. ECF No. 62; *see also* ECF No. 71 at 7 ("Lynch's sole remaining claims are his claims under the ADA and the Rehabilitation Act stemming from the foreclosure action and the small claims action."). The Judicial Branch has filed a motion for summary judgment as to all his claims. ECF No. 105. For the reasons set forth below, I GRANT that motion.

## II.     BACKGROUND

The following facts are taken from the parties' Local Rule 56(a) Statements and are undisputed unless otherwise indicated.[1]

---

[1] This case has a lengthy procedural history, for which I refer the reader to Judge Covello's ruling on the Defendant's motion to dismiss, ECF No. 51, and my initial review order, ECF No. 71, with respect to the operative complaint filed on January 28, 2019, ECF No. 62. I also note that Lynch proceeded *pro se* in this action from when he filed the original complaint on September 16, 2015, ECF No. 1, until the appearance of Attorney Baird on September 24, 2019, ECF No. 86. As a result of Lynch's *pro se* status and the Second Circuit's liberal standard for construing complaints filed by *pro se* litigants, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally.") (citing, *inter alia*, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam)), I consider the operative complaint to encompass events beginning

1

Lynch's claims relate to two different state court lawsuits in which he has been a defendant: (1) a property foreclosure action commenced on December 29, 2014 ("the foreclosure action"), ECF No. 119 ¶ 36; ECF No. 126 at 371; and (2) a small claims action commenced by his landlord on July 14, 2015 ("the small claims action"), ECF No. 119 ¶ 50; ECF No. 126 at 174. Lynch proceeded in both actions largely *pro se*. ECF No. 119 ¶ 59; *see, e.g.*, ECF No. 126 at 184 (motion to dismiss small claims action filed by Lynch on August 18, 2015); *id.* at 372 (docket sheet noting that Lynch was self-represented from his appearance on April 6, 2015 until April 16, 2018, when Attorney Baird entered a limited appearance). Both before and after initiating this federal lawsuit, Lynch was actively involved in the foreclosure action. He filed at least 44 "written pleadings, affidavits, requests, motions, memoranda[, notices] and/or objections . . . ." ECF No. 119 ¶¶ 37, 42; ECF No. 126 at 372-79 (docket sheet in the foreclosure action). Lynch also filed several written pleadings, motions, or notices in the small claims action. ECF No. 119 ¶¶ 53, 55; ECF No. 126 at 174-227 (state court file in the small claims action). Lynch attended two hearings in the foreclosure action, on June 29 and July 8, 2015, prior to filing this federal action on September 16, 2015. ECF No. 119 ¶ 39.[2] He never appeared in court for the small claims action. ECF No. 119 ¶ 52. Judgment was rendered in the small claims action on September 25, 2015. ECF No. 126 at 214-15. The foreclosure action effectively ended with the sale of the property in April 2018. *See* ECF No. 77; ECF No. 126 at 378.

---

with the commencement of the foreclosure and small claims actions through the date of the operative complaint in this case – January 28, 2019. Nonetheless, on summary judgment, I consider only those events as to which the parties have specifically cited evidence, as required by Rule 56 and this Court's Local Rule 56.

[2] Lynch also alleges that he "personally appeared" in the foreclosure action on June 1, 2015, "as well as additional dates subsequent to the filing of his original complaint in this matter on 9/16/2015[.]" ECF No. 62 ¶ 51. He later acknowledged, however, that he made the allegation regarding the June 1, 2015 appearance in error and that he did not appear in the foreclosure action on that date. ECF No. 119 ¶ 38. In addition, Lynch points to no specific evidence in his Local Rule 56 Statement of court appearances in the foreclosure action after July 8, 2015. I discuss this point in greater depth below. *See infra* note 13.

Lynch submitted at least 48 ADA accommodation requests to the Judicial Branch before filing the operative complaint in this action, ECF No. 119 ¶¶ 31, 34-35; ECF No. 126 at 143-45 (summarizing Lynch's ADA accommodation requests beginning April 23, 2014 and ending January 28, 2019); ECF No. 120-1 at 2-3 (listing at least 46 ADA accommodation requests or grievances beginning April 23, 2014 and ending January 3, 2019). Lynch's accommodation requests included those for: (1) audio recordings of court proceedings, ECF No. 119 ¶ 51; (2) a notetaker as an auxiliary aid, ECF No. 119 ¶ 76; and (3) breaks during court proceedings, ECF No. 119 ¶ 75.[3] In his requests for accommodation, Lynch "indicated that accommodations were necessary because of his extreme depression, anxiety, posttraumatic stress disorder [PTSD], legal abuse syndrome, and heart condition." ECF No. 119 ¶ 67; ECF No. 120-1 at 7. Lynch also claimed that the major life activities affected by his disabilities included: (1) sleep/sleep patterns/inability to sleep; (2) breathing/heart rate/elevated blood pressure; (3) inability to focus/concentrate/communicate; (4) reading/writing/note taking; and (5) digestive/eating. ECF No. 119 ¶ 68; ECF No. 126 at 79-84; ECF No. 120-1 at 1113-15. Lynch "does not experience issues with his breathing, heart rate, or blood pressure when engaging in athletic activities or with writing, research, or public speaking activities outside of the court context, even when he has tight deadlines." ECF No. 119 ¶ 71. By contrast, "when required to write, research, or speak

_____

[3] Although not explicitly discussed in the parties' statements of material fact, Lynch's ADA accommodations requests also included, among others, that: (1) all further proceedings in his cases occur at the Litchfield courthouse; (2) no further proceedings in his cases be scheduled via the "short calendar"; (3) Lynch be provided with computer-aided real-time transcripts during court proceedings; (4) Lynch receive advanced notice of hearings; (5) each court hearing be limited to a single topic; and (6) the Judicial Branch avoid assigning Lynch's hearings to court rooms with layouts where counsel tables are placed one in front of the other, and where Lynch is placed farthest from the Judge. *See* ECF No. 126 at 143-45 (chart produced by Lynch summarizing all ADA accommodations requested); ECF No. 120-1 at 6-9 (letter dated January 28, 2019, from Lynch to the Judicial Branch, summarizing all ADA accommodation requests with respect to all of Lynch's pending cases in the Connecticut state court system and requesting, in addition to other accommodations, that the Judicial Branch "adjust [its] policies, practices and procedures to enable sufficient time for full resolution of a request for accommodation and a grievances review before adjudication of an issue." (emphasis in original)).

in the court context, [Lynch] experiences increased heart rate, difficulty breathing, and an increase in blood pressure for several days before and after the court event or deadline." *Id.* ¶ 72; *see also* ECF No. 120-1 at 7. The Judicial Branch began providing Lynch with audio recording in September 2015. ECF No. 119 ¶ 26; ECF No. 120-1 at 1632; ECF No. 126 at 6-7, 17.[4] Lynch was also authorized to bring an individual with him to court to take notes on his behalf, but he did not do so. ECF No. 119 ¶ 76.

Since April 2014, Lynch has relied on friends and family for a place to live. ECF No. 119 ¶¶ 48-49; Deposition of Daniel Lynch, ECF No. 126 at 40 ("I have been at the mercy of people who[] have put me up for free. And my brother in Granby, and my sister in Cheshire, a friend of a friend in Cheshire . . . . I have not had the capability to rent, nor have I rented any housing of any sort . . . since . . . March 2014 time-frame. And I have had temporary housing in some cases temporary as just a couple of days, and some cases several weeks . . . ."). Lynch's difficulties in the state court actions derived, at least in part, from his "lack of a stable home", ECF No. 119 ¶ 49; ECF No. 226 at 57-58, and his *pro se* status, ECF No. 119 ¶¶ 59-60, 80.

## III.   LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 657-58 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir.

---

[4] Lynch acknowledged receipt of these audio recordings, but argues that they were too late to provide him with meaningful access. ECF No. 119 ¶ 75.

2013).  "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).  The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## IV.   DISCUSSION

The Judicial Branch has moved for summary judgment as to all of Lynch's claims, arguing that: (1) there is "a lack of evidence that [Lynch] is a qualified individual with a disability under either the ADA or the [Rehabilitation Act] . . .", ECF No. 105-1 at 1; (2) " even if he were [such a qualified individual], [Lynch] was not as a practical matter denied meaningful access to the state courts in either the foreclosure action or the small claims action, by reason of his disability or otherwise", *id.*; (3) Eleventh Amendment sovereign immunity bars Lynch's ADA claims, *id.* at 34; and (4) Lynch cannot meet the Rehabilitation Act's causation or deliberate indifference standards, *id.* at 39.  Lynch has responded by arguing that, based on the record evidence, a reasonable jury could decide that the Judicial Branch violated the ADA and Rehabilitation Act, ECF No. 118 at 1, and that sovereign immunity does not bar his claims under the ADA, *id.* at 27.  I agree with the Judicial Branch and find that the undisputed facts demonstrate that Lynch's failure to accommodate, disparate treatment, and retaliation claims under the ADA and Rehabilitation Act cannot survive summary judgment.

A.      **The Legal Framework**

1.      **ADA and the Rehabilitation Act**

Title II of the ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2018). Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (2018). "[A]lthough there are subtle differences between these disability acts, the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 of federally assisted programs and activities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (internal quotation marks omitted). Unless one of these "subtle differences" applies to a particular case, courts in the Second Circuit treat claims under the two statutes identically. *Id.*; *see also Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 n.6 (2d Cir. 2002) ("Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same."). Because none of these differences is relevant to the ruling that follows, I consider Lynch's ADA and Rehabilitation Act claims together.

To establish a prima facie case of discrimination in violation of Title II of the ADA and Section 504 of the Rehabilitation Act, the plaintiff must demonstrate that (1) he is a "'qualified individual' with a disability"; (2) that the "defendants are subject to the ADA"; and (3) that the

plaintiff was "denied the opportunity to participate in or benefit from [the] defendant['s] services, programs, or activities, or [was] otherwise discriminated against by [the] defendant[], by reason of [the] plaintiff's disabilities." *Henrietta D.*, 331 F.3d at 272. "The ADA defines 'discriminate' as, inter alia, 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the provider of the service] can demonstrate that the accommodation would impose an undue hardship on' its operations." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186 (2d Cir. 2015) (citing 42 U.S.C. § 12112(b)(5)(A)).[5] Thus, "[a] qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted). Lynch relies on the first and, principally, the third theories in this case.

To establish a prima facie case of retaliation, the plaintiff must show that he was (1) "engaged in protected activity," i.e., that he opposed an act in violation of the ADA or made, or assisted in, a charge under the ADA; (2) that the defendant was "aware of this activity"; (3) that the defendant "took adverse action against the plaintiff"; and (4) "a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse . . . action." *Richter v. Connecticut Judicial Branch*, No. 3:12CV1638 JBA, 2014

---

[5] Although this definition of "discrimination" comes from Title I of the ADA, the Second Circuit, as in *Dean*, has interpreted it to apply to Title II as well. *See also Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 n.7 (2d Cir. 2003) ("[T]he definition of 'disability' applies to all of the ADA. Similarly, 'discrimination,' 42 U.S.C. § 12131, which is not defined in Title II, may take its meaning from Title I." (internal citations omitted) (brackets in original)). Failure to make a reasonable accommodation is also a recognized theory of discrimination under the Rehabilitation Act, because "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers. . . . [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Alexander v. Choate*, 469 U.S. 287, 301 (1985); *see also Henrietta D.*, 331 F.3d at 273 (applying *Choate* to a claim arising under Title II of the ADA).

WL 1281444, at *9 (D. Conn. Mar. 27, 2014), *aff'd*, 600 F. Appx. 804 (2d Cir. 2015); 42 U.S.C. § 12203(a).

The plaintiff bears the initial burden of establishing a prima facie case for a violation of the ADA or the Rehabilitation Act.  *See Dean*, 804 F.3d at 190 (2d Cir. 2015) (applying burden-shifting analysis to a failure to accommodate a disability claim under Title II of the ADA and the Rehabilitation Act in the education context, where plaintiff bears the initial burdens of production and persuasion); *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) ("Claims alleging disability discrimination [in the employment context] in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court . . .", which places the initial burden on the plaintiff) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

### 2.    The Eleventh Amendment

Lynch is suing a state agency, the Judicial Branch.  The Eleventh Amendment bars suits against a State or one of its agencies or departments, regardless of the type of relief sought unless (i) the State consents to the suit, *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or (ii) Congress abrogates Eleventh Amendment immunity under Section 5 of the Fourteenth Amendment, *id* at 99.  Because there is no indication that the Judicial Branch has consented to suit in this case, the issue is whether Congress has validly abrogated the Judicial Branch's Eleventh Amendment immunity under Section 5.  To decide that issue,  "[a court] must resolve two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004) (internal quotation marks omitted).

Congress unequivocally expressed its intent to abrogate the States' Eleventh Amendment immunity when a State is sued under Title II of the ADA.  42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.").  Further, in a case involving a Title II challenge to barriers to physical access to state courts, the Supreme Court found that Congress acted under a valid grant of constitutional authority when it sought to abrogate the States' Eleventh Amendment immunity under Title II.  *Lane*, 541 U.S. at 530 ("[W]e find that Title II unquestionably is valid § 5 [of the Fourteenth Amendment] legislation as it applies to the class of cases implicating accessibility of judicial services . . . .").  Two years later, in *United States v. Georgia*, the Supreme Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  546 U.S. 151, 159 (2006) (emphasis in original).  The *Georgia* Court established a three-step process for determining whether Congress has validly abrogated a state's Eleventh Amendment immunity from suit for a particular Title II claim:

> [A court must] determine . . . , on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.*; *see also Mary Jo C. v. New York State & Local Retirement System*, 707 F.3d 144, 152 (2d Cir. 2013) (applying *Georgia*'s three-part test to a claim arising under Title II of the ADA).  "[I]f a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end."  *Mary Jo C.*, 707 F.3d at 152.  As a result, and because the plaintiff bears the initial burden as described above, *see Dean*, 804 F.3d at 190, the first task in determining whether the Eleventh

Amendment bars Lynch's ADA claims is to determine whether the evidence in the record at least creates a triable issue about whether the Judicial Branch has violated that statute.[6]  As the Judicial Branch has acknowledged, ECF No. 105-1 at 39, the Eleventh Amendment is not a bar to Lynch's claim under Section 504 of the Rehabilitation Act, which was enacted under Congress' Spending Clause authority.  *See Zahran ex rel. Zahran v. New York Dep't. of Educ.*, 306 F. Supp. 2d 204, 310 n.2 (N.D.N.Y. 2004).  Thus, although the first task of evaluating whether the plaintiff has met his burden remains the same under either statute, the consequences of failing to meet that burden differs, i.e., whereas a plaintiff's failure to meet his initial burden under the ADA will result in that claim being barred by the Eleventh Amendment, such a failure will simply mean that the claim fails to satisfy the elements of the Rehabilitation Act.

---

[6] There is "a growing fracture among the district courts in this Circuit in their approach to determining whether Congress validly abrogated state sovereign immunity under Title II of the ADA."  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015).  Some district courts in this Circuit do not apply the *Georgia* test and, instead, rely on *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98 (2d Cir. 2001), holding that a "plaintiff must show a violation of Title II motivated by either discriminatory animus or ill will stemming from the plaintiff's disability" to recover money damages in a suit under Title II. *Dean*, 804 F.3d at 193-94 (internal quotation marks and citation omitted).  In the context of fundamental rights, like the right of access to the courts, some district courts describe the conflict as between the *Garcia* test and that of *Lane*, unmodified by *Georgia*.  *See, e.g.*, *Gribbin v. New York State Unified Court Sys.*, No. 18CV6100PKCAKT, 2020 WL 1536324, at *5 (E.D.N.Y. Mar. 31, 2020) ("Some courts have found that a Title II claimant [must] establish the violation of a fundamental right in order to abrogate sovereign immunity, while others have concluded that a Title II violation must be motivated by discriminatory animus or ill will based on the plaintiff's disability." (internal quotation marks omitted) (brackets in original)); *see also Olson v. State of New York*, No. 2:04CV00419ENV-MLO, 2007 WL 1029021, at *7 (E.D.N.Y. Mar. 30, 2007) (collecting cases in the Second Circuit with divergent analyses of *Lane*, *Geogia*, and *Garcia*).  In *Dean*, however, the Second Circuit – referring to *United States v. Georgia* – noted that "[s]ubsequent Supreme Court precedent concerning the constitutionality of Congress's abrogation of Eleventh Amendment immunity under Title II calls *Garcia*'s validity into question."  *Dean*, 804 F.3d at 194.  I agree with the district courts that apply the three-part test contemplated by *United States v. Georgia*, 546 U.S. 151, 159 (2006).  *Accord Lenti v. Connecticut*, No. 3:20-CV-127 (SRU), 2020 WL 4275600, at *8 n.6 (D. Conn. July 24, 2020); *Richter*, 2014 WL 1281444, at *5-6.  In any event, as discussed below, Lynch does not meet the standards set forth in either *Garcia* – that the Judicial Branch acted with discriminatory animus or ill will  – or *Lane* – that the Judicial Branch violated Lynch's fundamental right of access to the courts.

**B.    Lynch's claims under the ADA and Rehabilitation Act cannot survive summary judgment.**

Apart from the Eleventh Amendment issue discussed above,  the Judicial Branch does not contest that it is subject to the ADA and the Rehabilitation Act, which is the second element of an ADA/Rehabilitation Act claim.  The parties disagree about whether  Lynch is a qualified individual with a disability and about whether he was denied the opportunity to participate in or benefit from the Judicial Branch's services, programs, or activities, or was otherwise discriminated against by the Judicial Branch, by reason of his disabilities.  *Henrietta D.*, 331 F.3d at 272.  The parties also disagree as to whether the Judicial Branch retaliated against Lynch in violation of either statute.  For the reasons set forth below, I find that the undisputed facts demonstrate that Lynch has not met his burden to establish a prima facie case under either Title II of the ADA or Section 504 of the Rehabilitation Act, and, as a result, his claims under the ADA are barred by the Eleventh Amendment and his claims under Section 504 of the Rehabilitation Act fail for lack of proof.[7]

**1.    The undisputed facts show that Lynch has not met his burden to demonstrate that he is a qualified individual with a disability.**

The Judicial Branch argues that Lynch has not demonstrated that he is a qualified individual with a disability under the ADA or the Rehabilitation Act because (1) Lynch has not produced the necessary medical evidence to support his claimed impairments of PTSD, legal

---

[7] As a result, I need not consider whether Lynch's proposed accommodations are unreasonable because they would impose an undue hardship or burden on the Judicial Branch, or would require a fundamental alteration in the nature of the Judicial Branch's services, programs, or activities.  *See Dean*, 804 F.3d at 190 ("Once the plaintiff has met the light burden of producing evidence as to the facial reasonableness or plausibility of the accommodation, the burden falls to the defendant . . . to persuade the fact-finder that the proposed accommodation is unreasonable.  That burden may be met by establishing that the requested accommodation would (a) impose undue hardship on the operation of the defendant's service, program, or activity, or (b) require a fundamental or substantial modification to the nature of its . . . program or standards.").  Likewise, I also need not consider whether the Judicial Branch has "offer[ed] through the introduction of admissible evidence a legitimate non-discriminatory reason . . ." for any of its actions alleged to be discriminatory by Lynch.  *McBride*, 583 F.3d at 96.

abuse syndrome, and a heart condition, ECF No. 105-1 at 4-7; and (2) Lynch has not met his burden to demonstrate that his claimed impairments of anxiety and depression substantially limit his ability to perform one or more major life activities, *id.* at 8.  Lynch objects, arguing that: (1) the Judicial Branch itself recognized him as being such a qualified individual when it granted him various accommodations for his claimed disabilities and, as a result, a reasonable trier of fact could find that Lynch was disabled under the ADA, ECF No. 118 at 6-7; and (2) Lynch need not produce expert medical evidence because "[a]nxiety, depression, PTSD, and a heart condition fall within the impairment[s] that a lay jury could understand", *id.* at 15.  I agree with the Judicial Branch.

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).  "The term 'disability' means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ."  *Id.* § 12102(1).  These three definitions of "disability" have different implications for failure-to-accommodate claims and disparate treatment claims.  In this case, one of these implications is that Lynch may proceed only under subsection (A) for his failure-to-accommodate claim.  That is so because, under the 2008 amendments to the ADA (the "ADAAA"), "a public entity . . . need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability . . . solely under subparagraph (C) . . . ."  42 U.S.C. §

12201(h); *see also Shomo v. Dep't of Corr. & Cmty. Supervision*, No. 915CV01029GLSATB,

2019 WL 7971871, at *12 (N.D.N.Y. Oct. 7, 2019), *report and recommendation adopted*, No.

915CV1029GLSATB, 2020 WL 486868 (N.D.N.Y. Jan. 30, 2020) ("[T]he ADAAA now makes

clear that no failure to accommodate claim can be made, as a matter of law, for an individual

who was 'regarded as' disabled, rather than who was actually disabled.") (collecting cases).  In

addition, because Lynch asserts that he currently has a qualifying disability under the ADA, and

not that he formerly had a disability that he no longer suffers from, I find that subsection (B)

does not apply and thus need only consider whether Lynch is actually disabled under subsection

(A).  *See Mancini v. City of Providence*, 909 F.3d 32, 40 (1st Cir. 2018) (Whereas an "actual

disability" under subsection (A) "requires a showing that the plaintiff [currently] has a

cognizable disability[,]" a "'record of disability' may be satisfied by a showing that the plaintiff

had a disability in the past . . . .").  His disparate treatment claim may proceed under subsection

(C), however, because, as shown below, the Judicial Branch did regard Lynch as a qualified

individual with a disability under the ADA based on Lynch's representations.  ECF No. 118 at 7-

11; ECF No. 122 at 1-2; *see also* 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement

of 'being regarded as having such an impairment [under subsection (C)]' if the individual

establishes that he or she has been subjected to an action prohibited under this chapter because of

an actual or perceived physical or mental impairment whether or not the impairment limits or is

perceived to limit a major life activity.").  As a result, his disparate treatment claim meets the

first element of an ADA claim and, as noted above, the Judicial Branch agrees that the second

element is satisfied; I thus consider that claim, as well as the retaliation claim (which requires no

proof of disability – actual or "regarded as"), in Sections IV.B.2 and 3 below.  For purposes of

the failure-to-accommodate claim, I now to turn to whether Lynch has met his burden to demonstrate that he was actually disabled under subsection (A) and find that he has not.

To proceed under subsection (A), Lynch must demonstrate that (1) he has a "physical or mental impairment" that (2) "substantially limits one or more [of his] major life activities." 42 U.S.C. § 12102(1)(A). "The definition of disability [under the ADA] shall be construed in favor of broad coverage of individuals . . . , to the maximum extent permitted by the terms of this chapter." *Id.* § 12102(4)(A). The "term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008[,]" *id.* § 12102(4)(B), in which Congress set forth its purposes to reject the courts' then-

> inappropriately high level of limitation necessary to obtain coverage under the ADA, to convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis[,]

ADA Amendments Act of 2008, Pub. L. No. 110-325, § 2, 122 Stat. 3553, 3553-54. "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 28 C.F.R. § 35.108(d)(1)(v). However, courts are "[m]indful that not every impairment that affects an individual's major life activities is a *substantially* limiting impairment, [and] in assessing whether a plaintiff has a disability, [the Second Circuit] ha[s] been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those

activities[.]"  *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016) (emphases in

original) (internal quotation marks and citations omitted).

   "Whether medical evidence is necessary to support a disability discrimination claim is a

determination that must be made on a case-by-case basis." *Mancini*, 909 F.3d at 39.  "[T]he

critical inquiry is whether a lay jury would be capable of making such an assessment without

medical evidence." *Id.* at 40; *see also Grabin v. Marymount Manhattan College*, 659 Fed. Appx.

7, 9 (2d Cir. 2016) (affirming district court's grant of summary judgment in favor of defendant

on plaintiff's Rehabilitation Act claim supported only by lay testimony because, *inter alia*:

"Under Federal Rule of Evidence 701, a lay witness can testify only about opinions that are

'rationally based on the witness's perception,' and 'not based on scientific, technical, or other

specialized knowledge within the scope of Rule 702.'  Fed. R. Evid. 701(a), (c).").  Courts in the

Second Circuit generally have "imposed a requirement [in ADA claims] that, for a plaintiff to

survive summary-judgment, [he] must supply more than [his] own deposition testimony, even if

accompanied by unsworn medical evidence." *Jones v. New York City Transit Auth.*, No.

17CV06460AMDSMG, 2020 WL 1550582, at *6 (E.D.N.Y. Mar. 31, 2020) (internal quotation

marks omitted) (collecting cases).  "However, medical evidence as to the extent of an

individual's impairment is not always required to survive summary judgment." *Rodriguez v.

Vill. Green Realty, Inc.*, 788 F.3d 31, 43 (2d Cir. 2015) (interpreting the ADA's definition of

disability and the plaintiff's associated evidentiary burden pre-ADAAA).

   As noted above, Lynch cited "extreme depression, anxiety, posttraumatic stress disorder

[PTSD], legal abuse syndrome [LAS], and heart condition" as his impairments.  ECF No. 119 ¶

67.  First, I consider whether Lynch's claimed conditions constitute "physical or mental

impairments" under the ADA.  In doing so, I evaluate two categories of evidence that Lynch

submitted into the summary judgment record: (1) Lynch's own testimony; and (2) any medical evidence Lynch has submitted.  Second, I consider whether the conditions he has shown to be (or at least raised a triable issue about) impairments substantially limit any major life activities.

> **a.**   **The undisputed facts show that Lynch has not met his burden to demonstrate that he has PTSD or LAS.**

Lynch has failed to establish that his asserted PTSD or LAS constitutes an impairment. Lynch has not provided any evidence that a doctor diagnosed him with PTSD or LAS.  ECF No. 119 ¶¶ 14, 17.  Dr. Kenneth Nori, Lynch's internal medicine doctor and the only medical professional included in Lynch's Rule 26(a)(1) disclosures, did not diagnose Lynch with either condition and disclaimed his own expertise to do so.  *Id.*; *see also* ECF No. 126 at 250, 264 (Dr. Nori acknowledging that he had never heard of "legal abuse syndrome"); *id.* at 258 (in responding to whether he would ever diagnose someone with PTSD, Dr. Nori stated that "Usually, I use a more general term of anxiety.  You'd have to depose a psychiatrist for a – [sic]").  Lynch asserts that he spoke via telephone with another doctor, Dr. Karin Huffer, who purportedly diagnosed Lynch with "legal abuse syndrome", a form of PTSD.  *See* ECF No. 126 at 279 (Dr. Nori's treatment records for Lynch noting that Lynch reported his consultations with Dr. Huffer).  Lynch described having several telephonic consultations with Dr. Huffer about his "health history, current medications, physical symptoms, and challenges dealing with courts since 2008", ECF No. 120-1 at 51, after which she "discussed post traumatic stress disorder and her views on the extreme level of [Lynch's] anxiety and depression . . . , [and] shared her diagnosis of 'legal abuse syndrome,' . . . a form of PTSD."  ECF No. 120-1 at 51-52.  Indeed, Lynch admits that he filed his first request for ADA accommodations in 2014 "at the suggestion of Dr. Huffer."  ECF No. 120-1 at 52.  His own reports of his discussions with Dr. Huffer are inadmissible hearsay, however, and he has not provided any medical records or testimony from

Dr. Huffer or any other physician diagnosing him with LAS or PTSD.[8]  *See* Fed. R. Civ. P.

56(c)(2),(4).  This is a fatal omission because PTSD – in any form – is a complex psychiatric

disorder that requires medical expertise to diagnose; lay testimony is insufficient.  *See Steffy v.*

*Cole Vision Corp.*, No. 05-C-0204, 2008 WL 7053517, at *4 (E.D. Wis. Jan. 9, 2008) ("whether

the plaintiff suffers from PTSD and major depression [are] concepts that are beyond the

comprehension of a jury."); *see also Tardif v. City of New York*, 344 F. Supp. 3d 579, 597

(S.D.N.Y. 2018) (finding that a licensed psychologist was qualified to offer testimony on PTSD,

"but just barely."); *Skipp v. Murphy*, No. 3:17-CV-1974 (VAB), 2018 WL 8803711, at *3 (D.

Conn. Sept. 28, 2018), (finding that "bare allegations" that plaintiff suffered from PTSD,

unsupported by a clinician's formal diagnosis or other medical evidence, because of alleged acts

by members of the judiciary were insufficient to state a discrimination claim under the ADA),

*reconsideration denied*, No. 3:17-CV-1974 (VAB), 2019 WL 3231773 (D. Conn. July 18, 2019).

Further, as noted by other courts, "the phrase 'Legal Abuse Syndrome' does not appear as any

type of diagnosis listed in the Diagnostic and Statistical Manual of Mental Disorders ('DSM'),

but rather, appears to have been coined by author Karin Huffer," *Lilley v. Peeler*, No. 1:15-CV-

128, 2015 WL 5169258, at *1 n.2 (S.D. Ohio Aug. 10, 2015), *report and recommendation*

*adopted*, No. 1:15CV128, 2015 WL 5162488 (S.D. Ohio Sept. 3, 2015), the same individual

Lynch consulted.[9]  Even if LAS is a valid mental disorder, its apparent novelty as a form of

PTSD not recognized in the DSM only underscores the need for expert testimony to establish

---

[8] Unfortunately, Dr. Huffer appears to have passed away during the course of this litigation.  *See* ECF No. 105-1 at n.8; ECF No. 119 ¶ 74.

[9] In her writings, Dr. Huffer "describes Legal Abuse Syndrome as a type of PTSD brought on by abusive and protracted family court litigation."  *Id.*; *see also In re Adoption/Guardianship of C.E.*, 210 A.3d 850, 858 n.11 (Md. 2019), *reconsideration denied* (July 24, 2019) (noting that "Legal Abuse Syndrome" is a theory credited to Dr. Karin Huffer and "is not recognized in the DSM-V").

that a particular individual suffers from it.  Thus, because Lynch has not provided any medical evidence supporting his claim of PTSD and LAS, he cannot show that either of those conditions amounts to a physical or mental impairment.

Lynch argues that "the evidence reasonably inferred from the conduct and representations of Judicial Branch employees [is] that Lynch is a qualified individual with disabilities . . . [,]" and he urges the Court to place the burden on the Judicial Branch to "produce evidence to impeach its own employees . . ." to prevail on this point.  ECF No. 118 at 12.  Specifically, Lynch points to statements by Judicial Branch employees Sandra Lugo Gines, Mark Ciarciello, and Jason Covallo to support his claim that the Judicial Branch acknowledged that he was "actually disabled" and is therefore a qualified individual with a disability as defined under the ADA.  ECF No. 118 at 3-12.  Lynch emphasizes an email exchange, dated February 8, 2019, in which Lugo Gines answered "Yes" when asked whether "the determination [has] already been made that [Lynch] is a qualified individual with a disability and that the requested accommodations are directly related to the [his] identified disability?"  ECF No. 120-1 at 18-19.  While I agree that this evidence is sufficient to create a triable issue about whether the Judicial Branch *regarded* Lynch as being a qualified individual with a disability, that is immaterial for the purposes of a failure-to-accommodate claim, as explained above.

And to the extent Lynch is arguing that these statements by Lugo Gines and the two other Judicial Branch employees are admissions that Lynch is, in fact, disabled, he points to no evidence suggesting that any of these employees were qualified to diagnose PTSD or any other medical condition that might be an impairment.  Instead, the record indicates that Lugo Gines is the ADA Program Manager for the Judicial Branch who completed sufficient training and education for her administrative role.  ECF No. 118 at 3; ECF No. 120-1 at 854-55 (Lugo Gines

18

describing her education: a bachelor's degree in "Hotel[,] Travel and Administration", a master's degree, and an "ADA Coordinator Training Certificate"). Mark Ciarciello, an attorney, is the Judicial Branch Manager for Labor Relations who handles grievances of Title II claims involving Judicial Branch employees. ECF No. 118 at 4; ECF No. 126 at 24. Jason Lovallo, also an attorney, is an assistant clerk and ADA contact at the Bridgeport courthouse. ECF No. 118 at 5; ECF No. 126 at 31. None of these individuals' qualifications appear to come close to the standard to qualify as an expert regarding PTSD diagnoses. *See Tardif*, 344 F. Supp. 3d at 597. As such, these three employees would be limited to testifying to opinions that are "rationally based on [their] perception" regarding Lynch's PTSD or LAS under Federal Rule of Evidence 701. But there is no evidence that any of them had personal knowledge of Lynch's conditions; Lynch points out that Lugo Gines declined invitations to speak to Lynch's physicians. ECF No. 118 at 3-4. In any event, their lay observations would not be admissible to support a diagnosis of PTSD or LAS, as explained above. Thus, to the extent the statements Lynch points to constitute opinions by these employees that he was in fact disabled, they are not admissible evidence and thus do not raise a genuine dispute of material fact as to whether Lynch suffered from PTSD or LAS. *See* Fed. R. Civ. P. 56(c)(2),(4). Lynch cites no case to support his assertions that the statements by these Judicial Branch employees, or his own testimony, would be sufficient for a reasonable jury to find that he suffers from PTSD or LAS. Thus, Lynch cannot demonstrate that he was impaired with PTSD or LAS and his failure-to-accommodate claim cannot proceed based on these conditions.

**b.    The undisputed facts show that Lynch has not met his burden to demonstrate that his heart condition, anxiety, or depression substantially limit his ability to perform a major life activity.**

Unlike his alleged PTSD and LAS, Lynch does offer some medical evidence related to his claimed heart condition.  *See* ECF No. 119 ¶ 7 (noting Dr. Nori's evaluation of Lynch's supraventricular tachycardia in February 2013); Deposition of Dr. Nori, ECF No. 126 at 243-44 (explaining that "supraventricular tachycardia" is a condition that usually "comes and goes" where the heart "beat[s] faster than 100 times per minute" for reasons other than, for example, drinking coffee or feeling nervous); *id.* at 244 (stating that, with respect to Lynch, "if I specifically wrote no palp[it]ations and no syncope [see *id.* at 269 so noting], those are – that's usually meaning that people aren't symptomatic of it at that time [in February 2013].").  In addition, the Judicial Branch does not contest that Dr. Nori diagnosed Lynch with, or treated him for, anxiety and depression.  ECF No. 105-1 at 8; ECF No. 119 ¶¶ 10-11.  I assume for purposes of this ruling that that these conditions constitute a "physical or mental impairment" as liberally defined under the ADA (as amended).[10]  Lynch nevertheless has failed to demonstrate that any of these three impairments "substantially limit[] [his] ability . . . to perform a major life activity as compared to most people in the general population."  28 C.F.R. § 35.108(d)(1)(v).

In his responses to interrogatories, Lynch expressly disclaimed his ability to compare his disabilities to the general population, *see* ECF No. 119 ¶ 69; ECF No. 126 at 78 (Lynch stating that "Plaintiff [Lynch] is asked to make comparisons between himself and the 'typical individual who does not suffer from the physical or mental health conditions' listed, and to then name

---

[10] Although Dr. Nori provided a general diagnosis of anxiety to Lynch that merited treatment, Dr. Nori testified that he was not a psychiatrist and generally did not have the expertise to diagnose more specific types of anxiety.  *See* Deposition of Dr. Nori, ECF No. 126 at 245-46 (discussing Dr. Nori's limitations with respect to psychiatric diagnoses); *id.* at 247 (distinguishing complaints of feeling depressed from clinical depression).

specific individuals.  Plaintiff does not have personal knowledge of the medical histories of other individuals . . . .").  In doing so, Lynch specifically "object[ed] to this question [comparing himself to the general population] as to form in that it requires a hypothetical comparison between [himself] and others who aren't challenged by one or more of the same disabilities while participating in the services, programs, or activities offered by the Defendant Connecticut Judicial Branch."  *Id.*  But this is precisely the kind of comparison required by the regulations implementing Title II of the ADA.  *See* 28 C.F.R. § 35.108(d)(1)(v); *see also Doherty v. Nat'l Bd. of Med. Examiners*, 791 F. Appx. 462, 466 (5th Cir. 2019) (holding that student failed to show a substantial likelihood of success on the merits of her claim that she had an actual disability or record of disability because, in part, the student's "testimony did not show that her reading impairment substantially limited her when compared to most people in the general population because she did not compare her reading ability to that of anyone but herself.").  As in *Doherty*, Lynch only makes comparisons to himself to establish his disability.  *See* ECF No. 126 at 78-84.  Thus, Lynch cannot establish that he is substantially limited in any major life activity as required under the governing regulations.

Even if Lynch had attempted to compare the limitations from his claimed impairments with those of the general population, his claim would still fail for lack of proof of "substantial[] limit[ation of a] major life activit[y]."  42 U.S.C. § 12102(1)(A).  Lynch describes his disabilities as arising only in connection with his pending state court cases: "Outside of the context of the Judicial Branch, [he] is generally not impacted by the triggers which cause his conditions to be debilitating . . . ."  ECF No. 126 at 83; *see also id.* ("As a former and frequent international public speaker, [Lynch] would regularly be tasked with presenting complex technical topics to large, non-technical audiences.  His ability to read, prepare, present, listen, and take notes were

not impaired.  He was able to listen to a range of unscripted questions from attendees, either write them down and respond at a later time or respond within minutes.").  Lynch even stated that his disabilities are connected with a particular courthouse in Bridgeport.  He described how, "[o]n several occasions, [he] has been to Judicial Branch facilities other than Bridgeport (1061 Main Street) and for matters unrelated to any of his cases.  It is notable that many of the same barriers don't exist and participation becomes less of an issue, without the need for a full range of accommodations." *Id.* at 82.  In effect, Lynch claims that his "substantial limitations" related to sleep, breathing and heart rate, inability to focus or communicate, reading and notetaking, and digestion occur *only* in the context of *his own* state court cases and then, at least primarily, *only* at a particular courthouse in Bridgeport.  Even in this narrow context, Lynch describes a series of effects of short duration occurring around court appearances: (1) problems sleeping in the days ahead of a court appearance, ECF No. 119 ¶ 21; ECF No. 126 at 79[11]; (2) an elevated heart and breathing rate in or around court appearances, *id.* at 80 ("often for a day or two prior to a court event or deadline, as well as a day or two afterwards."); (3) difficulty concentrating and communicating "in the context of court hearings or reading or writing court documents . . .", such that he is less able to "formulate concise, meaningful, and direct responses . . . and then be able to deliver them without getting off focus, agitated, or off on an unrelated tangent or being repetitious[,]" *id.* at 81; (4) difficulty taking notes during court hearings because "[h]is hands are often shaking and [his] arms/legs are tingling to the point that his own handwriting/printing is

---

[11] Lynch also asserts that he has increased fatigue resulting from his November 2018 cancer diagnosis.  *See* ECF No. 126 at 66.  However, the cancer diagnosis and associated general fatigue do not appear to be, and Lynch does not argue that they are, related to his purported disabilities specific to his court appearances and the associated ADA accommodations he has sought since 2014.  In any case, Lynch has not made any claim that the Judicial Branch has denied him reasonable accommodations related to his more recent cancer diagnosis and I thus have no occasion to consider it in the context of this case.

mostly illegible[,]" *id.* at 82; and (5) in the day or two prior to a scheduled court proceeding, a

diminished appetite that leaves him "weak from lack of proper nourishment . . .", *id.* at 84.

But it is not unusual to experience stress and anxiety in and around court appearances,

even for experienced attorneys, let alone for *pro se* litigants trying to stave off the foreclosure of

their homes. *See* ECF No. 119 ¶ 13 ("In Dr. Nori's experience, some lawyers suffer situational

anxiety in connection with litigation."). I have no reason to doubt that Lynch experienced stress

and anxiety in his state court actions, including those not at issue here. Indeed, he proceeded *pro*

*se* against experienced attorneys in multiple suits, had limited financial resources and uncertain

housing, and was apparently undergoing substantial disruption in his personal and professional

life. *See id.* ¶¶ 45, 48, 49, 80. While these circumstances no doubt would have warranted an

extra measure of patience and understanding from the presiding judges involved, they do not

suggest that he was "substantially limit[ed in his] ability . . . to perform a major life activity as

compared to most people in the general population." 28 C.F.R. § 35.108(d)(1)(v); *see also Woolf*

*v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) (in the employment context, "where a plaintiff's

condition leaves him unable to perform only a single, specific job, he has failed to establish a

substantial impairment to his major life activity of working. . . . This longstanding, common-

sense principle . . . recognizes that employees who are precluded only from doing their specific

job, or from working under a specific supervisor, do not have a 'disability.'") (internal quotation

marks and citation omitted); *Wiltz v. New York Univ.*, No. 118CV00123GHWSDA, 2019 WL

721658, at *8 (S.D.N.Y. Feb. 1, 2019) (finding that the plaintiff had failed to state a claim under

Title II of the ADA, where plaintiff alleged that "depression, anxiety and stress conditions limit

him from dealing with stressful situations, including 'housing court litigation'", because: (1)

"difficulty in dealing with stress is more properly characterized as an impairment than a major

life activity"; (2) "the only activity [the plaintiff] identifies is participating in housing court litigation, which the Court does not find to be a major life activity"; and (3) "[w]hile litigation undoubtedly involves a number of major life activities, such as reading, concentrating, thinking and communicating, even if the Court were to construe [the plaintiff's] allegations as including such activities, [the plaintiff] has not alleged sufficient facts to show how his depression, anxiety or stress have limited any of those activities."), *report and recommendation adopted*, No. 1:18-CV-0123-GHW, 2019 WL 720700 (S.D.N.Y. Feb. 19, 2019), *appeal dismissed*, No. 19-705, 2019 WL 4521888 (2d Cir. Aug. 21, 2019); *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 50 (2d Cir. 2015) ("We note that a person is not substantially limited in the major life activity of obtaining housing simply because she is unable to, or regarded as unable to, live in a particular dwelling.  Rather, a person is substantially limited if, due to her impairment, she cannot live or is regarded as unable to live in a broad class of housing that would otherwise be accessible to her."); *Strujan v. Lehman Coll.*, 363 F. Appx. 84, 85 (2d Cir. 2010) (granting summary judgment in favor of defendant on an ADA claim in the education context, where plaintiff "claimed that her condition only prevented her from continuing in this particular [academic] course, and she was successful in her other courses.").

Thus, because the undisputed facts show that Lynch has not met his burden to demonstrate that he is a qualified individual with a disability under the ADA or Rehabilitation Act, I grant summary judgment in favor of the Judicial Branch as to Lynch's failure-to-accommodate claim.  I consider next whether Lynch was denied meaningful access to the Judicial Branch's services – an inquiry relevant to both failure-to-accommodate and disparate treatment claims.

**2.      The undisputed facts show that Lynch was not denied meaningful access to the Judicial Branch's services.**

Lynch cannot meet the third element of an ADA/Rehabilitation Act discrimination claim, i.e., that he was denied the opportunity to participate in or benefit from the Judicial Branch's services, programs, or activities, or was otherwise discriminated against by the Judicial Branch, by reason of his alleged disabilities. *Henrietta D.*, 331 F.3d at 272.  In the Second Circuit, courts examining this element – which is a requirement of both disparate treatment and failure to accommodate claims – first "ask whether a plaintiff with disabilities 'as a practical matter' was denied 'meaningful access' to services, programs or activities to which he or she was 'legally entitled.'" *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).  Then, if so, they ask whether such denial was "by reason of" the plaintiff's disabilities. *Henrietta D.*, 331 F.3d at 272.  I undertake the first inquiry in this subsection of the ruling.  Because Lynch cannot demonstrate that he was, as a practical matter, denied meaningful access to the Judicial Branch's litigation services, I do not reach the latter causation question.

First, I note that Lynch claims neither that he has faced physical barriers to accessing the Judicial Branch's services nor that a hearing impairment prevented him from hearing the judge or opposing counsel in his state court actions.  Rather, he argues that his alleged disabilities prevented him from fully participating in court hearings in the state court actions *while he was there and actively participating*.  ECF No. 118 at 24-25.  Specifically, Lynch argues that, without his requested accommodations (e.g., timely audio recordings, a court-provided notetaker), he is unable to participate fully in the Judicial Branch's services (here, the litigation process) on an equal footing with those who are not disabled.  *Id.*  The undisputed facts in the record, and the

state court records in both Lynch's small claims and foreclosure cases[12], make clear that Lynch was not denied meaningful access to the Judicial Branch's services in either the small claims or the foreclosure action.

Lynch's claim that he was denied meaningful access to the Judicial Branch's services in the small claims action fails because he never physically appeared in court in that case. *See* ECF No. 119 ¶ 52. Lynch's own description of his alleged disabilities focuses on the situational nature of his problems that occur in and around court appearances. ECF No. 126 at 79-84. In addition, his requested accommodations nearly all revolve around his purported issues of performance in the courtroom, and do not relate to his ability to write and submit legal briefs outside of the courtroom. *See* ECF No. 120-1 at 7-9. Indeed, Lynch wrote and filed multiple pleadings and motions, *see, e.g.*, ECF No. 126 at 180-97 (Lynch's motion to dismiss the small claims action); *id.* at 200-06 (Lynch's motion for clarification in the small claims action), *id.* at 208-12 (Lynch's "notice of void orders and lack of personal jurisdiction" filed in the small claims action on September 17, 2015 – one day after he filed the federal complaint at issue here). The fact that Lynch ultimately lost – the court in his small claims action entered an order of default judgment against Lynch, ECF No. 126 at 214 – may have been disappointing, but his "dissatisfaction with the . . . court's rulings or the outcome of the proceedings are not sufficient to show that he was excluded from participating" in the Judicial Branch's services under the ADA or the Rehabilitation Act. *Wiltz*, 2019 WL 721658, at *8.

---

[12] With respect to those state court records referenced herein that are not currently in the summary judgment record, I take judicial notice of the court records in Lynch's state small claims and foreclosure cases. *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003). Specifically, I refer below to the foreclosure action, case number FBT-CV15-6047655-S, and cite it as the "State Court Foreclosure Docket" ("SCFD") followed by the docket number. The foreclosure action docket is available online at http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=FBTCV156047655S (last visited September 28, 2020).

Lynch's claim that he was denied meaningful access in the foreclosure action also lacks merit.  In that case, as far as the record discloses,[13] he appeared in court twice – on June 29, 2015 and July 8, 2015 – and advocated on his own behalf, in addition to submitting numerous written filings making legal arguments.  ECF No. 119 ¶¶ 37, 39, 42.  Between the commencement of the foreclosure action and the sale of the home, Lynch submitted at least 40 written filings.  ECF No. 119 ¶¶ 37, 42.  The foreclosure court adjudicated Lynch's assertion that it lacked personal jurisdiction over him because of the alleged ADA violations on its merits – even though it did not have to.[14]  Specifically, the foreclosure court denied Lynch's motion to dismiss because,

---

[13] As noted above, *supra* note 2, Lynch points to no specific evidence of a court appearance in the foreclosure action after July 8, 2015.  In his Local Rule 56(a) statement, neither citation that Lynch provides supports the proposition that he was "required to attend numerous other state court foreclosure hearings without accommodations" after July 8, 2015.  *See* ECF No. 119 ¶ 39.  The first citation, ECF No. 120-1 at 1233-41, is the docket in the foreclosure action.  But nothing on the face of the docket describes whether, or when, any particular litigant actually appeared in court.  The second citation, *id.* at 73 ¶ 222, just states that Lynch appeared in court on July 8, 2015.  Nor does Lynch cite in his Local Rule statement any other evidence in the voluminous record in this case showing that he attended a court hearing in the foreclosure action after his filing of this lawsuit on September 16, 2015.  The Local Rules of this Court "require[] parties to cite [in the Local Rule statement] to specific paragraphs when citing to affidavits or responses to discovery requests and to cite to specific pages when citing to deposition or other transcripts or to documents longer than a single page in length."  D. Conn. L. Civ. R. 56(a)(3).  The Rules warn litigants that "[f]ailure to provide specific citations to evidence in the record [in the Local Rule statements] . . . may result in the Court deeming admitted certain facts . . . or in the Court imposing sanctions . . . ."  *Id.*  Especially in light of the over 2,000 page record submitted by the plaintiff, Lynch's Local Rule statement frequently fails to comply with this requirement in that it includes multiple citations to broad page ranges in the plaintiff's evidence, many of which – as in the case of the evidence cited in ECF No. 119 ¶ 39 – do not support the proposition for which it is cited.  The only other reference to specific court appearances in the foreclosure action the Court could find in the haystack of materials Lynch submitted states that he appeared on March 21, March 27, and April 17, 2017.  ECF No. 120-1 at 85 ¶ 293.  But Lynch points to no evidence that he was denied meaningful access on these dates, all of which occurred after the Judicial Branch agreed to provide him accommodation.  ECF No. 119 at ¶ 26.  And the March 27, 2017 entry, SCFD No. 135.10, an order denying Lynch's second motion to dismiss, suggests that, as on other occasions, Lynch appeared in court and made arguments, in addition to submitting written briefs:  "After consideration of the briefs and arguments of the parties, the second motion to dismiss is denied.  Both sides assured the Court that no stay or injunction has been issued in the federal action against the Connecticut judiciary . . . ."  *Id.*  The remainder of the order describes the legal arguments made by Lynch, apparently in writing as well as orally, and those of the foreclosure plaintiff, and then denies the motion after providing the court's legal reasoning.  *Id.*  Nothing in the order, and no other evidence Lynch points to, suggests that he was unable to make any legal argument effectively, that he had other arguments that he sought to make but was somehow prevented from making, or that he was otherwise denied the opportunity to meaningfully participate in the hearing.

[14] Lynch had already filed one motion to dismiss, which was denied because he waived his right to object to personal jurisdiction because (1) he had already filed an answer to the complaint and (2) he filed the motion to dismiss after the state's procedural deadline for filing such motions.  SCFD No. 113.50 at 1; *see also* ECF No. 105-1 at 27-28.

among other reasons, the court presiding over his federal complaint (the instant dispute) had not issued any "stay or injunction . . . against the Connecticut judiciary", SCFD No. 135.10 at 1, and without such an order the state court had "no basis for interfering with [the foreclosure] plaintiff's right to seek foreclosure of the mortgage in state court while defendant pursues his remedies under the ADA against the State in federal court." *Id.* After the foreclosure court denied a third motion to dismiss filed by Lynch, he filed a fourth – this time contesting the court's subject matter jurisdiction because, as summarized in the court's ruling on the motion, the foreclosure court "had no jurisdiction to enter a judgment of foreclosure by sale of the premises because a different Superior Court judge had already entered orders regarding sale of the premises in a dissolution of marriage action . . . ." SCFD No. 206 at 2 (summarizing Lynch's prior motions and arguments in the foreclosure action). Lynch also reasserted the same personal jurisdiction arguments based on the Judicial Branch's alleged failure to comply with the ADA and various constitutional provisions. *Id.* at 3. The foreclosure court denied the fourth motion to dismiss on May 11, 2018 in a detailed 8-page ruling that carefully considered, but rejected, Lynch's legal arguments. *Id.* And the foreclosure court granted the foreclosure plaintiff's motion for summary judgment as to liability because, among reasons, there was no genuine dispute as to any material fact, including that the payments on the mortgage were in default. SCFD No. 133.10 at 1; *see also* SCFD No. 133 at 1; ECF No. 120-1 at 65, 1915.

Lynch argues that he was denied meaningful access, but he fails to explain how. It is undisputed that he went to court, he stood up in front of the judge, he presented legal arguments, he responded to the judge's comments and questions, and he responded to arguments from opposing counsel. For example, in the June 29, 2015 hearing, Judge Jennings heard argument by Lynch and opposing counsel regarding Lynch's motion for a continuance. ECF No. 126 at 300,

302.  Judge Jennings was initially trying to determine which motion was at issue in the hearing

(noting a motion to dismiss and a motion for continuance) when Lynch offered to explain.  *Id.* at

302.  Judge Jennings noted that the motion for continuance involved "[a]dditional … lead time to

address application process for non-attorney subpoena, summons and service of same[,]" then

asked Lynch to "[t]ell [him] more about . . ." his motion.  *Id.*  Lynch responded:

> Essentially, Your Honor, there are two elements for the request to – for the continuance
> for whatever date the Court, you know, deems.  Number one, because I'm not represented
> by counsel, the process for me to have a witness here to testify requires that I first of all
> know the date that we're going to be in court.  Second, I have to then fill out an
> application – two applications down with the Clerk's office; one is an application to
> request the subpoena for the witness and then also an application for a fee waiver and I
> have to wait for both of those to be approved before ultimately I would hope to get the
> subpoena and then make service on the three different parties, one of – at least one of
> whom is out of State and so it's sadly been my experience, Your Honor, that that would
> probably require a date, you know, I'm going to say generically probably a month from
> now and then the second issue that we have with respect to scheduling of hearings is the
> administrative process that the Court – that the Judicial Branch uses for any person who
> requests accommodation under the Americans with Disabilities Act.  The Court – the
> administrative process from the branch requires a ten day so if I'm to request any
> accommodations for a hearing, I'm to do so with ten days prior to the hearing, yet if a
> motion is marked ready on a Thursday for a Monday, that's doesn't even give me enough
> time and then the Judicial Branch, you know, denies the request or in some cases doesn't
> deny it, just sends its back and says, look we need ten days . . .

*Id.* at 303-04.  Lynch continued answering Judge Jennings' questions regarding his motion for

continuance and made arguments against opposing counsel who objected to Lynch's motion for

continuance.  *See id.* at 305-09.  Later, in discussing whether Lynch had waived his opportunity

to object to personal jurisdiction by failing to file his motion to dismiss with the required 30-day

window, Lynch stated that:

> I can argue that [my challenge to personal jurisdiction] was within 30 days because I
> immediately removed to Federal Court.  It bounced around there for various reasons. . . .
> The Federal Court sent it back down.  I then had to file an appearance [in the foreclosure
> action].  I think my appearance date is – I think in the record – I think it shows April 6[th]
> and my motion to dismiss was filed on April 30[th] within the 30 days.

*Id.* at 312-13.

Lynch similarly advocated zealously in the July 8, 2015 hearing before Judge Kamp regarding the denial of a fee waiver for a transcript that Lynch sought.  ECF No. 120-1 at 1591. After Lynch made introductory arguments justifying his application for a fee waiver for a transcript, Judge Kamp stated

> The reason, Mr. Lynch, I denied the transcript is that these fee waivers are subject to statute.  As a matter of fact, the statute is identified on the form.  And I just double-checked the statute again because my recollection was that there's no fee waiver [pro]vision for transcripts.  There [are] fee waivers for other things that's allowed by statute, but transcripts are not one of them.  So I felt constrained [by the statute] . . .  I try to be consistent, Mr. Lynch.  And – and not just in your request, but any request that doesn't meet the requirements of the statute which I'm – feel compelled and bound to follow.  I deny transcript fee waiver requests just because when I read the statute it doesn't give me the authority to do it.  So that's why I denied them.  Not just yours, any one. . . .

*Id.* at 1593-94.  After a short back-and-forth about the specific statute number, Lynch responded:

> And so, Your Honor, the – and I say this as respectfully as I can, but what – what is a litigant to do who has no financial means to pay for the transcript yet needs a record of what transpired in court. . . .

*Id.* at 1596.  To this, Judge Kamp replied:

> Well, that's a good question for which I don't have an answer.  You know, I think that, again, if the legislature had – I don't know what they were thinking about when they . . . created the fee waiver statute, but they did not include transcript[s] as part of that.

*Id.*  A careful review of both transcripts only demonstrates that Lynch was capable of making legal arguments, remembering facts, and understanding and responding to questions and arguments adverse to his own position from both the judge and opposing counsel.

Further, Lynch does not point to any evidence suggesting that his arguments would have been different or that his performance in court would have improved had he received each accommodation he was requesting.  Indeed, because he often repeated the same arguments in court that he had made in written submissions – for example, that the court lacked personal and

subject matter jurisdiction over him because of the alleged ADA violations, *see, e.g.*, ECF No. 126 at 201 (Lynch arguing that the small claims court did not have personal jurisdiction over him "until such time as it can <u>prove</u> compliance [with the ADA]"); ECF No. 126 at 185, 188 (arguing that the Judicial Branch's alleged violations of the ADA deprive it of jurisdiction over Lynch, and that its orders are therefore void) – it is hard to see how, even during his court appearances, he was denied meaningful access.

It does not help Lynch's argument here that one of his main contentions presented in the state court actions – that the court lacked jurisdiction – was so plainly without merit yet was repeated so frequently.  Lynch was a Connecticut resident and the property involved in the foreclosure action was located in Connecticut, as was the rental property that was the subject of the small claims action; and he has cited no authority suggesting that ADA violations by a court would somehow deprive the court of jurisdiction.  *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is [his or her] domicile.").  To be clear, I am not suggesting that his ADA claim depends on the quality of his legal arguments in the state court; even a party's success in litigation does not save a court system from having to grant meaningful access to that party under Title II of the ADA.  *See Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1199 (10th Cir. 2007).  But Lynch's repeated presentation of the same meritless arguments in court that he was making in written briefs (composed at a time when he was not subject to the allegedly debilitating atmosphere of the courtroom) undermines any notion that an impairment somehow prevented him from making himself understood or communicating his position, and makes one wonder how any of the requested accommodations could have improved his litigation performance.

Lynch's arguments to the contrary are unpersuasive. He asserts generally that his requested audio was a reasonable accommodation and that the Judicial Branch's granting of this request as of September 2015 was insufficient because it was untimely. *See* ECF No. 118 at 24-25. But Lynch does not point to any particular motion, ruling, order, proceeding, or other event in either the small claims or foreclosure actions that he was unable to, or limited in his ability to, prepare for or respond to as a result of his alleged impairments.[15] And with respect to the only two court appearances to which he has specifically pointed (*see* note 13, *supra*), he offers no evidence suggesting that the lack of an audio recording, a transcript, or any of his other requested accommodations prevented him from doing or saying anything during those appearances or hindered him in filing written arguments before or after those appearances. Thus, Lynch cannot show that he was denied meaningful access to Judicial Branch services with respect to the small claims or foreclosure actions. *See Wiltz*, 2019 WL 721658, at *9 (dismissing ADA claims based on state court proceedings where the ADA plaintiff "was an active participant in the litigation" and his "dissatisfaction with the . . . court's rulings or the outcome of the proceedings are not sufficient to show that he was excluded from participating"); *Netti v. Ayers*, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017), *report and recommendation adopted*, 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (dismissing ADA claims by hearing impaired plaintiff, reasoning in part that "[i]n order to state a claim under the ADA, plaintiff must allege that she was *excluded from participating* in a public entity's services, programs, or activities . . ." and finding that the plaintiff was not "excluded from participating in the hearing" run by the Department of Motor

---

[15] In his complaint, Lynch alleges only one specific instance of having difficulty in preparing a brief in response to a court order because he did not have access to an audio recording or transcript of the proceeding in a timely manner. ECF No. 62 ¶¶ 123, 129. However, this particular instance occurred in a post-judgment hearing in Lynch's divorce action, which is not at issue here. *See* ECF No. 71 at 7.

Vehicles to hear her complaint against an automotive business because she was present at the hearing and had an interpreter, even though defendants "moved about the hearing room" and one of the defendants "blocked her view" of what the other defendants were doing during the hearing (emphasis in original)); *McNamara v. Kaye*, 2008 WL 3836024, at \*9 (E.D.N.Y. Aug. 13, 2008) (dismissing claims under the ADA and RA where the plaintiff "failed to provide the court with enough facts to raise a plausible claim that her multiple sclerosis placed her at a disadvantage throughout the disciplinary proceedings"); *see also McCauley v. Georgia*, 466 F. Appx. 832, 837 (11th Cir. 2012) (upholding dismissal of ADA claim against state court alleging, among other things, that "the clerk's office did not assign a single contact person" and the judge "did not have the sensitivity training necessary to interact appropriately with" plaintiff, because the plaintiff "did not explain how these alleged deficiencies affected her case or denied her access to the courts" and because she "was able to access the court and have her case heard on the merits . . .").

### 3.   No reasonable jury could conclude that the Judicial Branch disparately treated or retaliated against Lynch.

Finally, Lynch's disparate treatment claim fails because he cannot demonstrate that he was "otherwise discriminated against by [the Judicial Branch]" *Henrietta D.*, 331 F.3d at 272; *see also* 42 U.S.C. § 12132; 29 U.S.C. § 794(a); he also cannot demonstrate that the Judicial Branch retaliated against him in violation of the ADA or the Rehabilitation Act, *see* 42 U.S.C. § 12203(a). There is no evidence in the record suggesting that the Judicial Branch intentionally discriminated against Lynch, *Henrietta D.*, 331 F.3d at 272; 42 U.S.C. § 12132; 29 U.S.C. § 794(a), or that he was retaliated against for opposing violations of the ADA or otherwise engaging in protected activity, 42 U.S.C. § 12203(a).

Lynch's intentional discrimination claim fails because, as the Judicial Branch points out, ECF No. 105-1 at 32-33, the record does not include any "individual comparators or other specific evidence of disparate treatment" and therefore fails to establish an "essential element of his Title II [discrimination] claim." *Moore v. City of New York*, 2017 WL 35450, at *19 (S.D.N.Y. Jan. 3, 2017), *report and recommendation adopted*, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017); *see also Webb v. Arnone*, 2018 WL 3651333, at *8 (D. Conn. Aug. 1, 2018) (finding that inmate failed to state a claim under Title II of the ADA and the Rehabilitation Act because he did not "assert[] that the defendants discriminated against him or treated him differently because of his [disability]"; "[r]ather, [inmate] claims that he was treated the same as any other former death row inmate who had not been relieved of the out-of-cell restraint policy, and seeks to be treated differently than other inmates because of his disability."); *Atkins v. Cty. of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) ("The purpose of the ADA and Rehabilitation Act statutes is to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied. With no allegation of disparate treatment, no claim for discrimination under the ADA or Rehabilitation Act lies." (internal quotation marks and citation omitted)). Lynch points to no evidence that he was treated differently than any non-disabled litigants in the small claims and foreclosure actions. As described above, he participated in court proceedings in person and wrote and submitted legal arguments in support of the outcome he sought. Further, nothing in the transcripts of the two hearings in the foreclosure case suggests that the judges treated him differently because he was disabled; to the contrary, in the July 29, 2015 hearing concerning his request for a waiver of the fee for a transcript, the judge informed him that he denied waiver-of-fee requests for transcripts in all similar cases, because he did not believe the relevant statute authorized them. Likewise,

the retaliation claim fails because Lynch has only made conclusory allegations and "has not alleged adverse action [against him] beyond the denial of the ADA accommodations that are also the subject of the failure to accommodate claims." *Richter*, 2014 WL 1281444, at *9. As a result, Lynch's retaliation claim fails because he cannot meet the third element of such a claim, namely that the defendant "took adverse action against" him. *Id.*

The principal basis upon which Lynch argues that a reasonable jury could infer that the Judicial Branch discriminated by reason of his disability or retaliated against him[16] for engaging in protected activity is that it purportedly misrepresented the availability of audio as an ADA accommodation. ECF No. 118 at 26-27. Lynch points to the testimony of Sandra Lugo Gines, the ADA Program Manager for the Judicial Branch, ECF No. 126 at 2, given during a May 26, 2016 post-judgment hearing in the marital dissolution action. Lugo Gines testified that – prior to Lynch's request for audio – she had not granted such a request. ECF No. 120-1 at 1390-91. A document in the record titled "ADA Audio Requests prior to January 1, 2017", however, suggests that Lugo Gines did so as early as 2011. *Id.* at 2221. But this document does not suggest that Lynch was treated differently because of his disability. The document lists the name of the "client" (redacted except for Lynch, who, the document shows, made the majority of the requests for audio), the date and location of the accommodation sought, the employee who

---

[16] In his brief, Lynch also appears to suggest that the Judicial Branch's arguments in its motion for summary judgment are sufficient *by themselves* for a reasonable jury to infer discriminatory intent and retaliation. *See* ECF No. 118 at 22 ("A reasonable trier of fact could find more than an inference of discriminatory intent and retaliation from these statements [in the Judicial Branch's brief] which collectively discriminate and retaliate against Lynch by accusing him of violating others civil rights and placing them in danger all based on his assertion of rights under the ADA."). But this argument plainly fails. A lawyer defending a client in litigation does not violate the ADA – let alone cause his client to do so – by making legal arguments about why the plaintiff's ADA claim fails. And contrary to Lynch's assertion, no reasonable trier of fact could draw an inference of discriminatory or retaliatory intent on the part of the Judicial Branch from the legal arguments made by its lawyers.

received the request, the date of the request, and the disposition of the request. *Id.* at 2221-33. The document shows that, both before and after Lynch began filing his ADA accommodation requests for audio, Ms. Lugo Gines and other Judicial Branch employees both granted and denied requests for audio made by other individuals, who apparently also claimed they were disabled. Similarly, as to Lynch it shows that some – actually most – of his requests were granted, while others were denied. *Id.* Nothing in this document suggests disparate treatment of Lynch.

Further, the discrepancy between Lugo Gines' testimony at the May 2016 hearing and the above-described document does not support Lynch's argument – apparently made to support the retaliation claim – that Lugo Gines denied his requests for audio "between April 24, 2014, and September 15, 2015 . . . knowing that she had already provided it to others." ECF No. 118 at 26. Whatever Lugo Gines's intent might have been when she gave her testimony at the May 2016 hearing – and the transcript suggests that she simply did not recall requests earlier than Lynch's, *see* ECF No. 120-1 at 1390-91 (in response to questions about a specific prior ADA accommodation audio request, Gines stated that she did not "recall that information" and "would have to get [the individual file] from [her] office") – it would not be a sufficient basis for a reasonable juror to infer that she had retaliatory intent when she denied Lynch's requests for audio *one to two years earlier* (between April 2014 and September 2015), especially given the long string of Lynch's audio requests that she and other employees of the Judicial Branch granted beginning September 2015. *See* ECF No. 120-1 at 2221-33.

In addition, Lynch's ADA and Rehabilitation Act claims for discrimination and retaliation cannot proceed because no reasonable jury could conclude that he has met the "deliberate indifference" standard to show intentional violations required for damages actions

under either statute.  *See K.A. v. City of New York*, 413 F. Supp. 3d 282, 304 (S.D.N.Y. 2019)

("deliberate indifference remains the necessary showing" to state a claim for money damages

under the Rehabilitation Act) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d

98, 115 (2d Cir. 2001)); *Felix v. City of New York*, 344 F. Supp. 3d 644, 665 (S.D.N.Y. 2018)

("[I]ntentional discrimination [under the ADA or Rehabilitation Act] . . . may be inferred when a

policymaker acted with at least deliberate indifference to the strong likelihood that a violation of

federally protected rights will result from the implementation of the challenged policy or

custom.") (internal quotation marks omitted); *Viera v. City of New York*, No. 15 CIV. 5430

(PGG), 2018 WL 4762257, at *13 (S.D.N.Y. Sept. 30, 2018) ("Even where a plaintiff has

established that a covered entity violated the [Rehabilitation Act] . . . , a plaintiff is not entitled to

monetary damages absent a showing of an 'intentional violation.'" (citation omitted)).  "The

standard for intentional violations is 'deliberate indifference to the strong likelihood [of] a

violation' . . . ."  *Viera*, 2018 WL 4762257, at *13.  A showing of deliberate indifference

"requires more than gross negligence" and "requires that the indifference be a deliberate choice,

which is an exacting standard."  *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 344 (11th

Cir. 2012) (internal citation omitted).  "[N]egligence or bureaucratic inaction" is not enough.

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009) (quotation marks

omitted).  "Accordingly, knowledge that an individual has a disability and a failure to offer an

accommodation is not sufficient to establish deliberate indifference."  *Viera*, 2018 WL 4762257,

at *17.  "A plaintiff must instead demonstrate a failure to act in the face of actual knowledge that

the disabled individual requires . . ." accommodations to meaningfully access the public entity's

service, program, or activity, "under such circumstances where the level of indifference is 'so

pervasive as to amount to a choice.'"  *Id.* (quoting *Loeffler*, 582 F.3d at 276-77).  With respect to

the foreclosure and small claims actions, Lynch points to no evidence suggesting that the Judicial Branch failed to act "in the face of actual knowledge" that Lynch required his various requested accommodations – audio, transcripts, moving the furniture in the courtroom, and the like – to "meaningfully access" the court's services. As shown above, there were no court proceedings in the small claims action and, in the foreclosure action, Lynch showed up in court, made legal arguments to the judge, answered questions posed by the judge, and advocated on his behalf; he also submitted multiple briefs and other pleadings in both actions. Lynch fails to point to any evidence suggesting that the Judicial Branch had "actual knowledge" that the absence of his requested accommodations would cause Lynch's performance of these actions to suffer to the point of denying him meaningful access to the courts.

* * *

Lynch's claims under the ADA are barred by the Eleventh Amendment because no reasonable jury could conclude that he can demonstrate: (1) the first element of a failure-to-accommodate claim; (2) the third element of either a failure-to-accommodate or a disparate treatment claim; (3) the third or fourth elements of a retaliation claim; or (4) or that the Judicial Branch acted with deliberate indifference. Lynch's Rehabilitation Act claims fail for lack of proof for the same reasons.[17]

---

[17] Lynch also seeks punitive damages, but "[t]he Supreme Court has held that punitive damages are not available from a governmental entity." Ann K. Wooster, Annotation, *When Are Public Entities Required to Provide Services, Programs, or Activities to Disabled Individuals under the Americans with Disabilities Act, 42 U.S.C.A. § 12132*, 160 A.L.R. Fed. 637 (Originally published in 2000); citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *see also Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (holding that "punitive damages may not be awarded in private suits brought under . . . § 202 of the ADA and § 504 of the Rehabilitation Act"). Thus, Lynch may not, in this private suit asserting claims under Title II of the ADA and Section 504 of the Rehabilitation Act, seek punitive damages from the Connecticut Judicial Branch, a governmental entity. To the extent Lynch's amended complaint also seeks various forms of declaratory relief, I would in any event exercise my discretion to dismiss those requests because they all seek retrospective relief. *Huminski v. Connecticut*, 2015 WL 1650845 *5 (D. Conn. Apr. 14, 2015) ("[A] court may choose to dismiss an action for declaratory relief if the relief sought is purely retrospective or would not otherwise serve a useful purpose."). In addition, the request for injunctive relief Lynch makes in the amended

V.      **CONCLUSION**

For the reasons set forth above, I hereby GRANT Defendant's motion for summary

judgment (ECF No. 105).[18]  The Clerk is directed to close this case.


IT IS SO ORDERED.


_____
/s/
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                September 30, 2020

---

complaint (non-destruction of documents) is dismissed as moot and is, in any event, unnecessary because a litigant already has an obligation to preserve relevant documents.

[18] Because I find that the undisputed facts demonstrate that Lynch's claims under the ADA and Rehabilitation Act cannot survive summary judgment for the reasons described in this ruling, I do not reach the Judicial Branch's alternative arguments, including, among others, whether Lynch can meet the "essential eligibility requirements" for participating in the Judicial Branch's services, programs, or activities, whether he is collaterally estopped from making certain legal arguments in this court based on the same or similar arguments made in the state court actions, or whether Lynch can meet the causation requirement of either the ADA or the Rehabilitation Act.  In addition, I note that the conclusions I do reach in this ruling would warrant the dismissal of Lynch's claims with regard to his state court family and collections actions to the extent the claims based on those actions are not already barred by the *Rooker-Feldman* doctrine.  *See* ECF No. 71 at 9.